EOD   JUN 2 0 2000

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

FILED
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS

JUN 19 2000

WAYNE E. NELSON, CLERK
PS. REP. - NC

IN RE:                         )
                               )
JOHN A. HANNO,                 )        No. 98 B 36360
                               )
            Debtor.            )        The Hon. Jack B. Schmetterer
                               )        Presiding

## RESPONSE TO DEBTOR'S PURPORTED RULE 60(b) MOTION

TCF National Bank Illinois ("TCF"), creditor, files this Response to the Debtor's Purported

Rule 60(b) Motion ("Debtor's Motion") and Memorandum in Support ("Debtor's Memo").

## INTRODUCTION

Debtor's Motion, nominally portrayed as a Rule 60(b) Motion, is in reality another attempt

to overturn valid orders of the Circuit Court of Cook County.   TCF respectfully submits that this

Court simply has no jurisdiction to grant the relief requested by Debtor. Additionally, even if this

Court did have jurisdiction, the Rule 60(b) Motion would have to be denied for several reasons:

 (1)    Debtor does not meet the criteria for Rule 60(b) because, among other
reasons, he has not shown why the "newly discovered" evidence could not have been
discovered earlier;

(2)    The relief requested is simply not available because TCF is now the
undisputed owner of the property;

(3) Debtor's Motion is not supported by the affidavit Debtor proffers.  First, almost
none of the "facts" recited in the motion are supported by any affidavit.  Second, the
affidavit which is attached does not state when the alleged conversation between Mr.
Greiff and Mr. Brian Jensen took place;

(4) As the attached affidavit of Mr. Jensen shows, and as TCF will prove, at an
evidentiary hearing if necessary, the alleged "facts" which form the basis of Debtor's
Motion are simply not true.   In particular, Greiff and Jensen never spoke until after
the order of dismissal had been entered; and

(5) Debtor gives no explanation as to why, if TCF had refused to give a payoff letter,
Debtor did not move to compel TCF to do so.



## **BACKGROUND**

While this Court is familiar with many of the legal actions which have been filed by the Debtor, a complete review of those actions is necessary to enable this Court to understand the prejudice which would result to TCF from any stay of the state court's order of possession. The Debtor has been attempting, for more than five years, to use the federal bankruptcy system to delay the lawful orders of the Circuit Court of Cook County. He has filed no less than six different bankruptcy petitions, all in an attempt to delay the confirmation and enforcement of a Judgment of Foreclosure which was entered in the Circuit Court of Cook County on December 7, 1995.

First, a review of the current procedural status of this case is required. On April 1, 1999, the parties entered into a Stipulated Order (attached as Exhibit A) that allowed the Debtor until December 2, 1999, to sell his home. Pursuant to that Stipulated Order, if the Debtor did not sell the house and property located at 6 No. Trail (the "Property") by December 2, the Debtor's Sixth Bankruptcy would be dismissed. That Stipulated Order required the Debtor to provide TCF with a copy of any proposed sales contract before any such contract was signed, and required the Debtor to notify TCF at least two weeks in advance of any proposed sale. Stipulated Order, Paragraph 11. That Stipulated Order also provided that TCF would provide the Debtor with a pay-off letter, but only at the request of the Debtor. Stipulated Order, Paragraph 7.

Prior to December 2, 1999, Debtor did not sell his house or provide TCF with any proposed sales contract; it is undisputed that the Debtor did not request a payoff letter until November 29, 1999, and that the requested payoff letter was provided to the Debtor's attorney the very next day.[1]

---

[1] Debtor's current counsel has consistently told this Court (as well as Judge Bucklo) that Debtor never received a payoff letter. *See* Transcript of June 7, 2000 hearing before this Court, page 25-6, lines 23-1, attached as Exhibit B (the Court states that the Debtor didn't have a payoff letter in hand, and counsel responds "That's correct."); Transcript of June 8, 2000 hearing before Judge

Debtor is now attempting to use revisionist history to concoct a reason to vacate Judge Katz'

December 2 dismissal.  The reason for the urgency of Debtor's Motion is because Debtor believes

that his eviction from the Property (now owned by TCF) by the Sheriff of Cook County is imminent.

*See* Debtor's Motion, Paragraph 18.  Debtor is asking this Court for relief which it does not have

jurisdiction to grant (*see* Parts I and II below) because every other court it has petitioned has refused

to halt the eviction.  On June 2, 2000, Debtor asked Cook County Circuit Court Judge Lynn Egan

to stay the eviction.  Judge Egan refused, and a copy of her order denying Debtor's request is

attached as Exhibit F.  Debtor also asked the Illinois Appellate Court to stay the eviction.  On May

31, 2000, the Appellate Court denied Debtor's request.  *See* order attached as Exhibit G.  On June

7, 2000, Debtor requested emergency relief from this Court; this Court refused to grant the requested

relief, but allowed Debtor to brief his motion, and that is the brief which this pleading is responding

to.  Finally, on June 8, 2000, Debtor asked Judge Bucklo[2] (sitting as an appellate court reviewing

---

Bucklo, page 4, lines 5-6, attached as Exhibit C (Counsel represents to Judge Bucklo that TCF "refused to give a payoff letter to the lenders."). This representation is false. *See* Affidavit of Jimmy D. Antonopoulos (originally filed with this Court on December 21, 1999 and attached as Exhibit D) attesting that a pay-off statement was delivered to Debtor's prior counsel on November 30, 1999, which is *before the Debtor's Sixth Bankruptcy was dismissed.*   Counsel has also stated that "there are parts of the record which show that Mr. Langone...made a request of the bank for a payoff letter.....There is [sic] affidavits in the record that's up on appeal." *See* Transcript of June 7, 2000 hearing before this Court, page 23, lines 2-10, attached as Exhibit B.   This statement is also demonstrably false.  No such affidavit was ever entered into evidence.  In fact, Debtor's prior counsel specifically informed this Court, on December 28, 1999, that "upon further inquiry, ...[Mr. Langone is]...not in a position to reduce this to an affidavit or testify." *See* Transcript of December 28, 1999 hearing before this Court, page 3, lines 14-19, attached as Exhibit E.  Any further attempt by Debtor's current counsel to represent to the Court that these two myths are fact will be responded to in an appropriate manner by TCF.

[2] The Debtor's emergency motion, filed before Judge Bucklo, has let to a confusing procedural posture for this case.  That motion effectively placed the same issues before both the trial and the appellate court at the same time.  Judge Bucklo rightly saw through this charade, and denied the Debtor's motion.   Debtor filed that motion before Judge Bucklo in spite of his counsel's assurances to this Court (in response to this Court's statement to counsel that he would issue a ruling

3

the Debtor's appeal of the bankruptcy dismissal) for emergency relief. Judge Bucklo also denied that request. *See* order attached as Exhibit H.

Second, this conduct continues Debtor's pattern of using the bankruptcy system to evade the effect of the state court foreclosure proceeding. Instead of going into the details of every single court proceeding Debtor has used to attempt to avoid the Circuit Court's lawful foreclosure order, TCF asks this Court to take judicial notice of the following efforts by Debtor to delay enforcement of the Judgment of Foreclosure: In re Hanno, 96 B 17578 (First Bankruptcy), filed July 9, 1996; In re Hanno, 97 B 09961 (Second Bankruptcy), filed April 2, 1997; In re Hanno, 97 B 25578 (Third Bankruptcy), filed August 21, 1997; In re Hanno, 98 B 22272 (Fourth Bankruptcy), filed July 20, 1998; In re Hanno, 98 B 25575 (Fifth Bankruptcy), filed August 17, 1998; In re Hanno, 98 B 36360 (Sixth Bankruptcy), filed November 12, 1998; Hanno v. Standard Federal, 93 M5 789 (lawsuit filed by Hanno against TCF), filed April 23, 1993; and Hanno v. Standard Federal, 97L 6389 (most recent version of lawsuit filed by Hanno against TCF). Hanno is also involved in two appeals: In re Hanno, 00 CV 0882 (appeal of dismissal of Sixth Bankruptcy), filed January 7, 2000, and Standard Federal v. Hanno, App. No. 1-00-0156 (appeal of the underlying foreclosure judgment).

## ARGUMENT

I. **THIS COURT LACKS JURISDICTION TO GRANT THE RELIEF REQUESTED BY THE DEBTOR.**

    A. **The Rooker-Feldman Doctrine Prohibits The Bankruptcy Court from Effectively Overturning the State Court Eviction Order.**

---

on June 7 if she wanted to take the matter up on appeal) that she would wait for this Court's June 23rd ruling. Just hours later, Debtor filed the emergency motion before Judge Bucklo, contradicting his counsel's prior statements to this Court. TCF was forced to respond to that the emergency motion before Judge Bucklo while this Motion was still pending, effectively allowing Debtor to have his cake and eat it too.

On December 9, 1999, Judge Boharic of the Circuit Court of Cook County issued an order confirming the sale of the property.[3] On April 27, 2000, Judge Egan of the Circuit Court of Cook County entered an Agreed Order granting possession of the premises to TCF on May 30, 2000. Debtor subsequently asked both the Illinois Appellate Court (which is in the process of reviewing Judge Boharic's order) and Judge Egan to stay the granting of possession, and both courts refused.

The Rooker-Feldman Doctrine provides that lower federal courts lack jurisdiction to engage in appellate review of state court determinations. *Wright v. Tackett*, 39 F.3d 155, 157 (7th Cir. 1994). As the 7th Circuit has explained, "Litigants cannot file collateral attacks on state court's civil judgments . . . [citing authority] . . . instead they must seek review in the United States Supreme Court [citing authority]. A district court engages in impermissible review when it is asked to entertain a claim that was not argued in the state court but is "inextricably intertwined" with the state court judgment." *Id.*

In the present case, it could not be clearer that Debtor has asked this Court to overturn Judge Boharic's order confirming the foreclosure sale and Judge Egan's order of possession. The relief requested in Debtor's Motion is to "restrain TCF from executing its order of possession [and] entering a preliminary and permanent injunction against TCF enjoining it from transferring . . . [the property] . . .".

In his Memorandum, Debtor argues that Rooker-Feldman does not deprive this Court of jurisdiction because Debtor is not really attacking the state court's orders. Debtor's Memo at page 6. Debtor claims he is merely asking this Court to "fashion a remedy" which would be to force TCF

---

[3] The Judgment of Foreclosure was issued in 1995; Debtor prevented confirmation until late 1999 by filing a series of bankruptcy cases. On page 6 of his Memorandum, Debtor claims, incorrectly, that the Judgment of Foreclosure was entered after the filing of Debtor's 6th bankruptcy.

to transfer the property to Debtor. Debtor's Memo at page 7.

The claimed distinction is specious. First, the relief requested in the motion, a stay of possession, would be in direct contradiction of Judge Egan's order of April 27, 2000 (attached as Exhibit I), granting TCF possession on May 30, 2000. Second, the relief which Debtor requests in his memo (but not in his motion), that TCF be forced to transfer the property to Debtor, would directly overrule Judge Boharic's order of December 9, 1999, confirming the foreclosure sale, which confirmed the issuance of the Sheriff's Deed which vested title in TCF.

Debtor also invokes the "source of injury" rule, which states that the Rooker-Feldman doctrine is applicable where the state court judgment is the source of the plaintiff's injury. Debtor's Memo at page 6. Debtor has correctly stated that rule, but has misapplied it. The injury complained of is the fact that TCF, rather than Debtor, is now the owner of the property, and is entitled to possession. The state court orders are the source of that injury.

**B.     There Is No Bankruptcy Jurisdiction.**

Even if the Rooker-Feldman doctrine was somehow inapplicable in this case, this Court would still not have jurisdiction. Debtor's Memo states "For purposes of his Rule 9024 motion only, Debtor concedes that presently, under state law, TCF holds title to the property in question and has been issued a Sheriff's Deed." Debtor's Memo at page 6.

But this Court's jurisdiction is limited to cases under Title 11, core proceedings arising under Title 11 or arising in a case under Title 11 (28 U.S.C. § 128) and proceedings which are not otherwise core proceedings, but which are otherwise related to a case under Title 11. 28 U.S.C. § 157(c)(1). Courts, starting with *In re Chicago, Rock Island & Pacific Railroad*, 794 F.2d 1182, 1186-88 (7th Cir. 1986) have held that once property leaves a bankruptcy estate, the bankruptcy court loses jurisdiction to decide disputes concerning that property. *See also In re Xonics*, 813 F.2d

6

127, 131 (7th Cir. 1987) (stating that ". . . jurisdiction does not follow the property. It lapses when property leaves the estate . . . the court needs a new source of jurisdiction (such as diversity), if the dispute is to remain in federal court").

In this case, the Debtor claims that he his merely asking this Court to enforce its own order. But as the *Xonics* court stated "Doubtless courts may enforce their orders . . . Yet that principal helps the [movant] only if a court must construe the order to determine [who is entitled to the property]" *Id.* at 130. In the present case, the right of ownership of the Property was not established by the Stipulated Order, but by Judge Boharic's confirmation of the foreclosure sale in state court. Debtor admits that TCF now owns the Property, but has not advanced any other basis for bankruptcy jurisdiction (or federal jurisdiction). The motion must be denied for this reason alone.

## II.    DEBTOR HAS NOT MET THE CRITERIA FOR RELIEF UNDER RULE 60(b)

### A.    The "Evidence" offered By Debtor is Not "New."

Relief under Rule 60(b) is an extraordinary remedy, and such relief is not appropriate as a substitute for direct appeal of a judgment. *In re Design Classics, Inc.*, 788 F.2d 1384, 1386 (8th Cir. 1986). Among its other requirements, Rule 60(b) allows relief based upon "newly discovered evidence" only where it "could not have been discovered in time to move for a new trial . . ." Debtor has given no reason why this "evidence" could not have been discovered earlier[4], and why it was not brought to this Court's attention until months after TCF was granted possession by the state court.

---

[4] The only statement in Debtor's Memo which even arguably gives a reason why Debtor could not have discovered this "evidence" is that Fieldstone Mortgage allegedly initially lied to the Debtor, and told him that the reason for the loan rejection was that the program for which Ms. Reitz had applied was no longer available. Debtor's Memo at 4. This statement, of course, casts serious doubt on the credibility of Mr. Greiff, and it is his affidavit upon which the Debtor's entire Motion is based.

As it turns out, the "new evidence" is only evidence of the same allegations previously considered by this Court and by Judge Katz. The Statement of Issues filed in connection with Debtor's appeal of this Court's decision (dated January 14, 1999, and attached as Exhibit I), identifies one of the "issues" [sic.] on appeal as being the issues contained in the Debtor's Motion to Vacate Judge Katz' December 2 dismissal order. *See* Statement of Issues, Paragraph Two. There is one issue, and one issue only, raised in that Motion to Vacate (which is attached as Exhibit J): TCF's alleged failure to provide a proper pay-off letter to Debtor, thereby restricting Debtor from following through on an alleged sale of the Property to a "friend" or investor. That is exactly the same claim Debtor is making, six months after the fact, in this motion. Debtor cannot have it both ways. Judge Katz and this Court have both independently considered Debtor's allegations that he did not receive a payoff letter, and have both concluded that Debtor should have raised this issue long ago. It doesn't matter that Debtor is claiming a new reason for his alleged failure to receive a pay-off letter. The complaint is still the same: Debtor claims TCF's failure to provide a proper pay-off letter prohibited him from selling the Property before December 1, 1999. This argument is not "new," and cannot form the basis of a Rule 60(b) motion.

**B.     Debtor has Not Alleged Why the "New Evidence" Couldn't Have Been Discovered Within 10 Days of the Dismissal.**

Debtor offers no excuse for his failure to raise these factual issues within ten days of the December 2 dismissal. In fact, the arguments made before Judge Katz on December 2, and made in the Debtor's Motion to Vacate that December 2 order, clearly illustrate that the Debtor has alleged for seven months that TCF failed to give him a pay-off letter. Pursuant to Rule 59(e), Debtor had to raise those issues within ten days. In fact, Debtor has known about the Greiff allegations since at least May 22, 2000, which is more than ten days before his Motion was filed. *See* letter from

Greiff, faxed to Debtor on May 22, 2000, attached as Exhibit K. Even if the Greiff allegations are

"new evidence," why did the Debtor wait more than the ten days allowed by Rule 59(e) to bring that

"new evidence" to this Court's attention?

### III.    EVEN IF THE BANKRUPTCY COURT HAS JURISDICTION TO CONSIDER THIS MOTION, THE RELIEF REQUESTED BY DEBTOR IS NO LONGER AVAILABLE.

Even if this Court did have jurisdiction to hear this motion, the relief requested by the Debtor

is simply no longer available. It is undisputed that TCF is now the legal owner of the Property. *See*

Debtor's Memo at page 6. Debtor is asking the Court for the extraordinary remedy of re-vesting

him with his prior ownership rights in the Property, rights which, under Illinois law, no longer exist.

Instead of admitting the obvious --that Debtor is asking this Court to overturn the Judgment of

Foreclosure entered by the Circuit Court of Cook County and stay the eviction order entered by

Circuit Court of Cook County, which would clearly be prohibited by the Rooker-Feldman doctrine

(*see* Part I(A) above) -- Debtor would have this Court create, out of thin air, a new property right.

Debtor offers no citation to support its request for this drastic remedy, and does not explain why,

if Debtor has indeed been harmed by TCF's alleged actions, Debtor could not be made whole by

monetary sanctions. The Judgment of Foreclosure was entered in 1995, years before the Sixth

Bankruptcy was even filed. In asking this Court to compel TCF to actually transfer its ownership

interest in the Property to the Debtor, Debtor is not just asking this Court to ignore the December

1999 confirmation of the Foreclosure Sale and Judge Egan's eviction order, he is also asking the

Court to ignore the 1998 foreclosure sale, as well as the 1995 Judgment of Foreclosure itself.

Debtor offers no authority explaining how an Illinois state court — much less a federal bankruptcy

court — could grant Debtor such an extraordinary remedy.

Section 105(a) does not give authority for the remedy Debtor seeks.

As Judge Lefkow observed in *In re Simmons*, 224 B.R. 879, 884 (Bankr. N.D. Ill. 1998), "the authority given bankruptcy courts under § 105(a) is not without limits." Quoting *U.S. v. Sutton*, 786 F.2d 1305, 1307 (5th Cir. 1986), the court stated: "That statute [§ 105(a)] does not authorize bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." *Id. See In re GGC Associates, Ltd.*, 178 B.R. 862 (Bankr. M.D. Fla. 1995) ("[§ 105 does not] grant the Bankruptcy Court a carte blanche power to enter orders which otherwise do not have any statutory basis or authorization by the Rules.").

Moreover, even if this Court had any discretion under Section 105(a), this would not be the case in which to exercise it. In the present case, Mr. Hanno has waited months, until the eve of the eviction, to take any action. As Judge Barliant pointed out in *In re Jones*, 129 B.R. 1003, 1011 (Bankr. N.D. Ill. 1991), it is a familiar maxim that "Equity aids the vigilant, not those who slumber on their rights." 3 Pomeroy's Equity Jurisprudence §§ 418, 419 at 169-71 (S. Symons 5th ed. 1941). *See Baker v. Cummings*, 169 U.S. 189, 18 S.Ct. 367, 42 L.Ed. 711 (1898) ("[E]quitable powers will not be exercised to discover whether one has been wronged, when, with full knowledge of the alleged wrong, he has allowed the bar of the statute of limitations to arise, and has slept upon his rights until such situation has arisen as to render it inequitable to afford him relief." *Id.* at 208-09, 18 S.Ct. at 374).

## IV.    THE "FACTS" ALLEGED IN DEBTOR'S MOTION ARE NOT SUPPORTED BY THE GREIFF AFFIDAVIT.

In addition to the factual misrepresentations made to this Court during the June 7 hearing (as noted above) Debtor's Motion contains numerous other deficiencies, including a critical omission

10

and significant factual errors[5]. First, the affidavit submitted by Steve Greiff is itself hearsay.

More important is the lack of specificity in the Greiff affidavit. Significantly, there is no mention in that affidavit of the dates on which Greiff allegedly spoke with Brian Jensen of TCF. Debtor's entire motion is based on the argument that Debtor was prevented from obtaining financing and selling the Property because of actions taken by TCF, and Debtor offers Mr. Jensen's conversation with Greiff as proof of such action. The failure to include any mention of the dates on which those conversations took place would seem to be a glaring omission. In fact, in order for Debtor's Motion to make any sense at all, those conversations must have taken place before December 1, 1999. That is not alleged in the Greiff affidavit, and for that reason alone, there is no credible factual support for the motion.

All of the other "factual" allegations contained in Debtor's Memo consist mostly of hearsay that is not supported by an affidavit or any other evidence. For example, the Debtor's Memo alleges that "other lenders received . . . communications from TCF and were likewise unable to obtain payoff information." Debtor's Memo at page 5. This statement is not supported by any evidence in the record. Debtor's Memo contains numerous references to TCF's alleged "wrongful conduct," "unclean hands," and "bad faith," yet there is not a single affidavit or piece of evidence in the record that could form the basis of a good-faith belief that TCF engaged in such conduct while the Sixth Bankruptcy was pending. There is not a single piece of evidence in the record which shows that TCF did anything to prevent Debtor from selling the Property prior to December 2, 1999.

---

[5] TCF is aware that this Court will not hear evidence at the June 26, 2000 hearing, and if the Court does decide on that day that it has jurisdiction to hear Debtor's Motion, TCF requests an evidentiary hearing so that it may offer evidence and testimony proving that the allegations made in Debtor's Motion— including significant portions of the Greiff affidavit — are materially false.

V.    **IN FACT, THE GREIFF/JENSEN CONVERSATION TOOK PLACE AFTER DECEMBER 2, 1999, AND THE OTHER FACTS ALLEGED IN THE AFFIDAVIT ARE NOT CORRECT.**

In fact, the conversations referenced in the Greiff affidavit did not take place until March 2000. *See* Declaration of Brian Jensen, attached as Exhibit L, Paragraph 4. Those conversations occurred long after the case was dismissed, and simply cannot provide the basis for a Rule 60(b) motion. It is nonsensical and simply impossible for Debtor to claim that conversations between Greiff and Mr. Jensen in March 2000 could have somehow hampered Debtor's ability to sell the Property before December 1, 1999. The relevant question is why Greiff's affidavit did not state when the conversations occurred, and why none of the pleadings filed by Debtor's counsel on his behalf mention the fact that these conversations occurred months after the Sixth Bankruptcy was dismissed.

Mr. Jensen's affidavit also shows that other statements in the Greiff affidavit are not correct. Moreover, as Judge Bucklo observed at the recent hearing, it is not credible to argue that parties cannot enter into a contract to sell real estate, and cannot apply for a loan, without a payoff letter. A payoff letter is required only after a loan has been approved (which never happened in Ms. Reitz case). It is hard to imagine (and Mr. Greiff does not supply an answer) why the buyer's lender even needs to know what the seller's payoff to its existing lender will be.

VI.    **DEBTOR OFFERS NO REASON WHY HE DID NOT ASK FOR THE REQUESTED RELIEF WHILE THE SIXTH BANKRUPTCY WAS STILL PENDING.**

The Debtor had eight months (the time period between the entry of the April 1 Stipulated Order and the December 2 dismissal) to request a pay-off letter. Yet Debtor's prior bankruptcy counsel did not ask for a pay-off letter until November 29, 1999, just days before the Stipulated Order was set to expire. Debtor offers no excuse for this delay. Debtor was also required to provide

TCF with a copy of any sales contract before that contract was signed.  Again, Debtor offers no explanation why he did not comply with that requirement of the Stipulated Order within the eight-month time period he was granted to sell the property.

If Debtor felt TCF was slow in providing him with a pay-off letter, he should have filed a motion before the Sixth Bankruptcy was dismissed.  It is reasonable to assume that if Debtor had sales contract for the Property, he would have presented that contract to TCF or this Court in the eight months prior to dismissal.

WHEREFORE, TCF National Bank Illinois respectfully requests that this Court deny the pending Motion and dismiss the Debtor's adversary proceeding numbered 00A527.

Respectfully submitted,

TCF NATIONAL BANK ILLINOIS

By: _____
One of Its Attorneys

Bruce N. Menkes
Kenneth R. Wysocki
**Davidson Mandell & Menkes**
303 West Madison Street
Suite 1900
Chicago, Illinois 60606
(312) 251-1000
39830.1

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JOHN A. HANNO, | ) | No. 98 B 36360 |
| | ) | |
| Debtor. | ) | The Hon. Jack B. Schmetterer |
| | ) | Presiding |

### STIPULATED ORDER

This Chapter 13 Proceeding was filed on November 12, 1998. TCF National Bank Illinois

("TCF"), which holds a first mortgage on the residence at 6 N. Trail Ct., Lemont, Illinois, which is

owned by the debtor, brought a motion to dismiss this proceeding on various grounds. The matter

is now before this Court on that motion, on the question of whether the plan proposed by the debtor

should be confirmed, and on TCF's motion for contempt of court, based on their claim that the

debtor refused to allow an appraiser access to his residence after this Court ordered him to do so.

Several evidentiary hearings have been held, and after negotiations, TCF and the debtor, who

has been assisted by Robert J. Adams and Associates, have reached a settlement of this matter on

the following terms:

1.    The plan is modified to provide for a completion date of December 1, 1999.

2.    TCF will withdraw its objection to the confirmation of the plan, as modified.

3.    TCF will withdraw its motion for contempt of this Court's order regarding granting access to the appraiser hired by TCF.

4.    TCF will set a motion to dismiss this case for December 2, 1999. If the sale of 6 N. Trail Ct. has not been concluded by that date, the Court will dismiss this case.

5.    The trustee shall pay TCF $15,000 in due course after confirmation of the plan out of the funds presently being held by the trustee, and shall pay TCF an additional $5,000 each month during the term of the plan, with the first $5,000 payment to be



EXHIBIT
A

made in April 1999, and with additional payments due in each subsequent month thereafter. In the event this case is dismissed, those sums shall be deemed to have been paid with respect to the arrearage.

6. The debtor shall continue to make current mortgage payments of $1,748.04 per month to TCF, and shall continue to make tax payments of $633 per month. The first mortgage payments shall be due on April 15, 1999, and additional payments will be due the 15th of each month thereafter. The next tax payment shall be due on April 15, 1999, and subsequent tax payments shall be due on the 15th of each month thereafter. All mortgage payments shall be applied first to interest due, then to any other loan charges due and then to the principal balance of the loan.

7. TCF shall provide a payoff letter without charge at debtor's request.

8. If any payment required in paragraph six (6) above is more than 30 days late, TCF may give notice of such default. Any such notice may be sent by regular mail, postage prepaid to the debtor and the trustee, and by messenger delivery to debtor's attorney. Such notice shall state that if the delinquent amount(s) are not received by TCF within 10 days of the date notice is sent, this case shall be dismissed upon TCF's motion.

9. In the event that this case is dismissed, pursuant to paragraphs 4 or 8 of this order or for any other reason, except for the successful completion of the plan, debtor shall be barred from filing any bankruptcy proceeding for 180 days following the date of the order of dismissal.

10. In the event that the property is sold pursuant to the plan, TCF shall be paid, and shall accept in full satisfaction of the indebtedness owed to TCF, an amount equal to all principal and interest then due to them, and all other amounts shown in TCF's Amended Proof of Claim, except that TCF shall only be allowed interest at the rate of 5% for the period from the date the petition was filed in this case to the date of confirmation.

11. The property may not be sold by the Debtor unless the net proceeds from such a sale which will be paid to TCF equal at least the amount of TCF's Amended Proof of Claim plus 5% interest for the period from the date the petition was filed in this case to the date of confirmation. The Debtor shall give TCF at least two weeks advance notice of any proposed sale, and shall provide TCF with a copy of any proposed sales contract before the contract is signed.

12. Nothing in this order shall be construed as preventing TCF from filing a future motion to dismiss or motion to lift the automatic stay.

The above agreement between TCF and the debtor is hereby adopted by the Court and entered.

_____
United States Bankruptcy Judge

ENTERED

APR 1 1999

JACK B. SCHMETTERER, JUDGE
UNITED STATES BANKRUPTCY COURT

Agreed:

TCF National Bank Illinois

By:_____
Bruce N. Menkes, One of its Attorneys

Debtor's Attorney

_____
Robert Adams

Debtor

_____
John A. Hanno

Page 3 of 3

1

1

2

3         IN THE UNITED STATES BANKRUPTCY COURT
                NORTHERN DISTRICT OF ILLINOIS
4                     EASTERN DIVISION

5

6    In re:                    )
                               )  No. 98 B 36360
7    JOHN HANNO,               )  Chicago, Illinois
                               )  June 7, 2000
8              Debtor.         )  9:30 a.m.

9

10              TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE JACK B. SCHMETTERER

11

12

     APPEARANCES:
13
     MS. JULIE BOYNTON
14   on behalf of John Hanno;

15   MR. KENNETH WYSOCKI
     on behalf of TCF National Bank Illinois.

16

17

18

19

20

21

22

23

24

25

EXHIBIT
B

2

1        THE CLERK:  John Hanno, 98 B 36360.

2        THE COURT:  Hanno.

3        MR. WYSOCKI:  Good morning, your Honor.

4    Kenneth R. Wysocki on behalf of TCF National Bank.

5        MS. BOYNTON:  Julie Boynton on behalf of

6    debtor, Mr. Hanno.

7        THE COURT:  Shall we wait for Mr. Ingram?

8        MS. BOYNTON:  Not on this one.

9        THE COURT:  Not on this one.

10       MS. BOYNTON:  I'll tender to the Court -- I

11   do have the fax service notices from yesterday.

12               (Document tendered.)

13       MR. WYSOCKI:  And, your Honor, for the

14   record, I received it after 5:00 o'clock yesterday,

15   and I didn't actually see it until about 9:00

16   o'clock this morning.  And on the notice, the first

17   page of the notice actually says "Thursday" on it as

18   well.  It says, "Thursday, June 7th."

19       THE COURT:  Well, I'm glad you're here

20   because I won't be here tomorrow.

21       MR. WYSOCKI:  That's what I've been told,

22   your Honor.

23       THE COURT:  Counsel, have you had a chance to

24   read these things?

25       MR. WYSOCKI:  Yes, your Honor, I have.

3

1        THE COURT:  Let me hear your initial

2   reaction.   I realize you haven't had a long time to

3   deal with this, but what's your reaction?

4        MR. WYSOCKI:  Right.   Your Honor, with

5   respect to the factual issues raised, with the

6   limited information I've been able to get from my

7   client in the last hour or so, I don't believe that

8   the affidavit is correct.   And if this ever comes

9   down to the substantive issues contained in that

10  affidavit, we'd like to contest it.  But I don't

11  think that's the most important thing for the Court

12  to look at today, your Honor.

13              I think the first thing to look at is I

14  would respectfully argue that I don't think this

15  court even has jurisdiction today to hear these

16  motions that they're filing.   You've got to remember

17  that this case was dismissed in December, and they

18  filed a timely notice of appeal.   This case, the

19  dismissal of this case, is currently on appeal

20  before Judge Bucklo.

21       THE COURT:  Dismissal of this case is on

22  appeal before Judge Bucklo?

23       MR. WYSOCKI:  Yes.

24       MS. BOYNTON:  But, your Honor, I --

25       THE COURT:  Would you wait, please, Counsel.

4

1        MS. BOYNTON:  Okay.

2        THE COURT:  Don't interrupt.  I'll hear you.

3        MS. BOYNTON:  Okay.

4        THE COURT:  I read your motions.  I want to

5   hear his response, then I hear, you.  Okay?

6        MR. WYSOCKI:  Your Honor, this case is

7   currently on appeal before Judge Bucklo, and the

8   debtor has asked for several extensions.  And in the

9   time period he's asked for these extensions, he's

10  run off to the Illinois State Appellate Court to try

11  to get a stay of the eviction.  They denied that on

12  Friday.  He's gone to the Forcible Detainer Court

13  and tried to get a stay on the eviction.  They

14  denied that also on Friday.

15        They failed to ask for a stay of

16  eviction before the Chancery judge, Judge Boharic.

17  So now, even though they're on appeal before Judge

18  Bucklo, they're trying to come back and somehow

19  revest jurisdiction in this court to stay something

20  that they should have asked for a stay a long time

21  ago, your Honor.

22        I have a case that I pulled up this

23  morning that's a Seventh Circuit case.  There is

24  some language in here citing some other cases.  And

25  with the Court's permission, I'd like to read it.

5

1          THE COURT:  Well, why don't you recite the

2    name and the citation of this case for the record

3    and then tell me what you think it says.

4          MR. WYSOCKI:  Your Honor, for the record,

5    this case is in the matter of Statistical Tabulating

6    Corp., Inc., and the cite is 60 F.3d 1286.  And,

7    your Honor, this is -- you know, in an hour, this

8    the only case I could come up with.  I don't want to

9    purport --

10          THE COURT:  What's the year of that?

11          MR. WYSOCKI:  Your Honor, it's a Seventh

12    Circuit case from 1995.  And I don't want to

13    represent to the Court that I've exhausted the

14    research on issue, because I haven't.  But the cite

15    that I've pull out of this case is as follows --

16          THE COURT:  What page?

17          MR. WYSOCKI:  It's on page 4 of the West Law

18    version.  It's on page 1289 of the F.3d version,

19    your Honor.

20          THE COURT:  Okay.

21          MR. WYSOCKI:  And the cite is as follows, and

22    I'm slightly paraphrasing.  It's a quote from

23    another case.  The filing of a notice of appeal is

24    an event of jurisdictional significance.  It confers

25    jurisdiction on the Court of Appeals and divests the

6

1   District Court of its control over those aspects of

2   the case involved in the appeal.  The jurisdictional

3   significance of a pending appeal applies equally to

4   a bankruptcy court.  The filing of a notice of

5   appeal to a district court divests the bankruptcy

6   court of jurisdiction to proceed with matters raised

7   by such appeal.  This divestment of jurisdiction

8   preserves the integrity of the appellate process by

9   avoiding needless confusion which would fall from

10  putting the same issue before two courts at once.

11           Your Honor, the entire argument that

12  they were making in December, first to oppose

13  dismissal and secondly in their motion for

14  reconsideration, was that there was some sort of

15  problem with the alleged payoff letter.  That's

16  exactly what they're going to argue on appeal with

17  Judge Bucklo, and that's exactly what they're trying

18  to reargue today.  Respectfully, the court doesn't

19  have jurisdiction to reinstate this case and

20  consider an argument that's currently going to be

21  before, essentially, the Appellate Court.  Your

22  Honor, that's my first argument in response to this

23  motion.

24           The second argument, your Honor, is

25  that this motion was filed pursuant to Bankruptcy

7

1    Rule 9024 which incorporates Federal Rule of

2    Procedure 60(b).  And that is the hook that the

3    debtor is trying to get around the ten-day rule in

4    this case.  They're claiming that this affidavit

5    that they've come up with is new evidence.  But,

6    your Honor, the problem is they don't even allege

7    what's required by Rule 60(b).  And what they've got

8    to allege is that they couldn't have diligently

9    discovered this evidence within the ten days

10   prescribed by Rule 59.

11           You've got to remember that this

12   affidavit they've submitted is saying that this

13   alleged conversation that took place, which I

14   disagree about their interpretation of, and I'm not

15   sure exactly what happened, it happened sometime

16   between April and December.  They're not really

17   sure, but it happened sometime in 1999.  There is no

18   reason, your Honor, why they can't explain --

19   obviously this has been at issue since December.

20   They can't explain why they didn't come up with this

21   argument within ten days of the dismissal, within

22   ten days of the motion for reconsideration.

23           THE COURT:  Well, if facially they set forth

24   a basis for relief, I suppose we would tell them to

25   put on some evidence as to how they got this

8

1   affidavit and why they couldn't come up with it

2   earlier and so forth.  I mean, the question is

3   whether I should reopen things so as to permit such

4   a hearing to go forward, Counsel.  So you are

5   correct in their burden, but we're not going to deal

6   with that burden at this moment.

7           MR. WYSOCKI:  Yes, your Honor.

8           THE COURT:  So go on to your next argument.

9           MR. WYSOCKI:  Your Honor, in a final

10  argument, and, again, I have skimmed over the

11  motions, so if I in any way misinterpret exactly

12  what they're asking, please forgive me.  But it

13  appears clear that one of the things that they're

14  asking for in their temporary injunction motion,

15  which is the second one in the packet I have, is I

16  guess they're asking the bankruptcy court to

17  reinstate a case that's on appeal and enjoin the

18  Cook County Sheriff.  And they're asking this court

19  to do that when Judge Egan in Bridgeview has

20  declined to do that.  Judge Boharic was never asked

21  to do that, has declined to do it.  And the Illinois

22  Appellate Court for the First District was asked

23  just last week to do that same thing, to stay the

24  sheriff from going forward with the sale.  And the

25  First District Appellate Court, and I apologize, I

9

1    didn't have time to bring in the order, they denied

2    that motion for a stay.   That's the proper relief

3    for trying to get a stay on the sheriff's order.   If

4    they wanted to ask for some relief in this court or

5    from Judge Boharic, they should have done that

6    months and months ago.   They've asked the Appellate

7    Court.   The Appellate Court has said, "No, there is

8    no grounds for this."   And now they're trying to

9    come up with some other argument trying to get the

10   federal courts to reinstate this and stay the state

11   court's order.

12          MS. BOYNTON:   Your Honor --

13          THE COURT:   Their adversary, which I assume

14   they either have filed or are about to file, seeks

15   injunction against TCF barring you from executing

16   the order of possession.   Secondly, transferring or

17   disposing of the residence and other unidentified

18   relief.   So they do not seek to enjoin the sheriff

19   of Cook County in the adversary.

20              Anything else you want to say?

21          MR. WYSOCKI:   Your Honor, I guess one final

22   response would be even if specifically they're

23   asking for TCF not to -- the effect is still the

24   same.   They're, in effect, asking the court -- and

25   I'm not denying, of course, that the court would

10

1  have jurisdiction over TCF if the court felt that

2  this appeal was properly before it, which we argue

3  it's not.  But what they're essentially doing is

4  they're asking, again, the federal court to

5  effectively enjoin that state court order, whether

6  it's effectively enjoining us because of the use of

7  the bankruptcy stay.  But that's essentially what

8  they're trying to do here.

9      THE COURT:  Counsel, do I understand

10  correctly from their motion that after I dismissed

11  the bankruptcy case you went forward and got the

12  sale confirmed?

13      MR. WYSOCKI:  Correct, your Honor.

14      THE COURT:  So that took place after I

15  dismissed the bankruptcy?

16      MR. WYSOCKI:  Correct, your Honor.

17      THE COURT:  And what is the status under

18  Illinois law of Mr. Hanno's legal position with

19  regard to that real estate?

20      MR. WYSOCKI:  Your Honor, I don't believe he

21  has any interest at this point in this real estate.

22  Additionally, in addition to the confirmation, we've

23  also received a sheriff's deed, and we've gone in,

24  started a forcible detainer action in Bridgeview.

25  The forcible detainer judge has ordered the sheriff

11

1    to evict Mr. Hanno.  It's been placed with the

2    sheriff, and that's in the process of being done

3    sometime in the next week or so.

4            THE COURT:  Doesn't that moot the appeal?

5            MR. WYSOCKI:  I think we will argue that it

6    does, your Honor.  No briefs have been filed in any

7    appeal.

8            THE COURT:  Of course, I suppose, somebody

9    could argue that they have some other purpose in

10   pursuing a Chapter 13, but I thought that the only

11   purpose in this case was, as I recall it, his effort

12   to retain his home.  Have you finished?

13           MR. WYSOCKI:  Yes, your Honor.  Thank you.

14           THE COURT:  Counsel, I'll hear you now.

15           MS. BOYNTON:  Your Honor, we believe this is

16   properly before the court.  I did have my law clerk

17   do some research yesterday with respect to 60(b)

18   motions because --

19           THE COURT:  Do you have something to cite to

20   me?

21           MS. BOYNTON:  I don't have anything with me.

22   But I was unsure of the procedure, whether I should

23   go here or to Judge Bucklo.  And from the research

24   which my -- you know, I had my clerk to determine,

25   based upon the research, because this is newly

12

1   discovered evidence, this is nothing that was --

2   there is nothing before the Appellate Court.  This

3   is evidence which was discovered afterwards.  This

4   isn't something that the Appellate Court is dealing

5   with now.  They couldn't be because this for the

6   first time is only coming before the trial court.

7          THE COURT:  Well, you are seeking to reopen

8   this case.

9          MS. BOYNTON:  The case was never closed

10   according to the docket.

11          THE COURT:  It wasn't?

12          MS. BOYNTON:  No, it was not.

13          THE COURT:  The trustee's final report came

14   out on April 28th.

15          MS. BOYNTON:  But the case was never closed.

16   That's why it came back here.

17          THE COURT:  Well, it may not be closed, but

18   that -- if the trustee has filed the final report,

19   the closing of the case is pure administrative

20   routine in the clerk's office.

21          MS. BOYNTON:  I mean, because I would have

22   also filed a motion to reopen the case if I needed

23   to, because according to the research that we looked

24   at yesterday, a 60 -- the court is not divested of

25   hearing a 60(b) as a state court would not be

13

1    divested of hearing --

2         THE COURT:  Yes.  But you've not brought in

3    any such research for me?

4         MS. BOYNTON:  I filed the documents based

5    upon the research that we had.  I didn't know that

6    jurisdiction would be an issue today.

7         THE COURT:  Okay.

8         MS. BOYNTON:  You know, if you want to give

9    us --

10        THE COURT:  It's an issue.  Let's assume I

11   find it an issue.

12        MS. BOYNTON:  Okay.

13        THE COURT:  Would you then be considering

14   dismissing the appeal or no?

15        MS. BOYNTON:  No.

16        THE COURT:  All right.  You're going to

17   pursue the appeal in any case, right?

18        MS. BOYNTON:  I believe so.  I haven't talked

19   to my client.  If we could --

20        THE COURT:  Let's go on to the next

21   question.

22        MS. BOYNTON:  Okay.

23        THE COURT:  The one I raised a moment ago.

24   You tell me in your motion that the sale was

25   confirmed after I dismissed the bankruptcy Chapter

14

1    13; right?

2         MS. BOYNTON:  Five days after, right.

3         THE COURT:  Right.  Now, under Illinois law,

4    didn't that terminate the interest of your client?

5         MS. BOYNTON:  That would terminate --

6         THE COURT:  Subject then to any appeal you

7    may have in state court?

8         MS. BOYNTON:  Subject to any appeal we have.

9    But also, your Honor, this is a court of equity.

10   The bank was the high bidder.  The bank now has

11   possession of this property.  If the bank acted

12   wrongfully to divest my client of this property, I

13   think this court in equity could order the bank to

14   allow my client to pay off the sums owed them and to

15   revest that property.

16        THE COURT:  Counsel, "a court of equity,"

17   you've got to watch how you use that phrase.  All it

18   means to me is we have, under Section 105, a bundle

19   of tools in our authority to carry out our

20   jurisdiction.  Some of those tools used to be called

21   "equitable remedies," including injunction, okay?

22   That doesn't enhance our jurisdiction and does not

23   make us ombudsmen.

24             Now, I've got to look to my

25   jurisdiction.  I'm not clear on how I have any

15

1  jurisdiction to do anything this morning.  But the

2  next question after that is are you -- you're

3  seeking to restore title in Mr. Hanno?

4       MS. BOYNTON:  Yes.

5       THE COURT:  Which has been divested under

6  Illinois law?

7       MS. BOYNTON:  Which has been divested

8  wrongfully under Illinois law.  In other words, had

9  this court -- had TCF not acted wrongfully, this

10 case would not have been dismissed, the debtor would

11 have been able to complete the sale, and they could

12 have not gotten the confirmation which they've got

13 in state court.

14      THE COURT:  Have you filed the adversary

15 that's attached to your motion for injunction?

16      MS. BOYNTON:  Yes, I have, your Honor.

17      THE COURT:  What is the number?

18      MS. BOYNTON:  It's 00 A 527.

19      THE COURT:  When was it filed?

20      MS. BOYNTON:  This morning.

21      THE COURT:  This morning.  You do not cite

22 here my jurisdiction in the adversary?

23      MS. BOYNTON:  I did cite jurisdiction in the

24 adversary.

25      THE COURT:  Could you bring it to my

16

1    attention?  Can you tell me where it's cited?

2          MS. BOYNTON:  It's in paragraph 1.

3          THE COURT:  Why do I have jurisdiction in the

4    case that's on appeal?

5          MS. BOYNTON:  Because the case has not been

6    closed, this court still has jurisdiction, according

7    to the case law, to hear matters which arise

8    afterwards.  Since the case was not closed, there is

9    no divesting of jurisdiction.  Only those things

10   which are on appeal before the Appellate Court --

11         THE COURT:  The dismissal was on appeal.

12         MS. BOYNTON:  The dismissal is on appeal.

13         THE COURT:  Right.

14         MS. BOYNTON:  But not the --

15         THE COURT:  The closing is not the critical

16   act.  It's the dismissal that's the critical order.

17   That is on appeal.  You want me to vacate the

18   dismissal, don't you?

19         MS. BOYNTON:  Yes.

20         THE COURT:  That very issue is on appeal.

21   And you're not telling me that something happened

22   after dismissal.  You're telling me that something

23   happened before dismissal that you just found out

24   about.

25         MS. BOYNTON:  Which we could not discover

17

1    with due diligence, yes.

2         THE COURT:  I understand.

3             Assume for the sake of argument,

4    Counsel, that you had not taken an appeal, and a few

5    days after I ordered dismissal you said, "Look what

6    we just found," and the dismissal hadn't taken place

7    and the confirmation of sale had not taken place.

8    Then I would have been within my jurisdiction to

9    entertain the question of whether to allow you to

10   put in this evidence, and then, if so, to decide

11   what to do about it.  I certainly agree with that.

12   We're past that.

13            A couple of things happened.  One of

14   the things that happened is, after dismissal under

15   Illinois law your client's interest was divested.

16   You're asking me to undivest it somewhere along the

17   line.  In other words, to restore his ownership.

18        MS. BOYNTON:  Well, not to undo that sale,

19   but to allow an equity -- this debtor to be able to

20   consummate, which should have been able to be

21   consummated through the stipulated order.

22        THE COURT:  Counsel...

23        MS. BOYNTON:  I mean, this is the bank

24   that's --

25        THE COURT:  I have to take the events as they

18

1   are today.  And the events were your client was

2   divested by an order of a circuit court confirming

3   the sale.  There is a dispute as to when rights are

4   cut off in foreclosure under Illinois law.  There is

5   some difference of opinion on that among the federal

6   judges.  But we all agree that by the time sale is

7   confirmed, the rights under Illinois law of

8   ownership are gone.  That's a judgment that you seek

9   to collaterally attack here.  Under the

10  Rooker/Feldman Doctrine, we are not supposed to be

11  courts of appeal over final judgments of state

12  courts.  That's number one.

13       MS. BOYNTON:  Judge, may I respond to this?

14  We are --

15       THE COURT:  Number two, you have not filed an

16  action which seeks before me to declare in some way

17  that they have an obligation to revest the title in

18  your client.  If you did do so, it would be

19  unrelated to any existing bankruptcy case.  So,

20  again, I lack jurisdiction, if you were to do that.

21          Number three, to the extent you seek to

22  reopen the issue of whether the case should be

23  dismissed by vacating that order of dismissal, which

24  is one of your motions, I can't see how I have any

25  authority over that so long as that appeal from that

19

1   very order is pending before the district court.

2           But let me get back to the fact --

3   let's assume I have jurisdiction to visit the

4   question of reopening the bankruptcy by vacating the

5   dismissal.  Let's assume that for the sake of

6   discussion.  Where does that get you?  Does not get

7   you to the question of ownership which has been

8   decided by the Illinois courts adversely to your

9   client and which I have no business trying to

10  interfere with that decision of the Illinois courts

11  under Illinois law.

12          MS. BOYNTON:  And nor are we contesting that

13  in this court.  What we're saying is that we are

14  acknowledging under Illinois law TCF is now the

15  owner of the property.  They were the high bidder at

16  the foreclosure sale.  What we're saying is that TCF

17  committed wrongful acts in this court.  They entered

18  into a stipulated agreement.  They acted in bad

19  faith to frustrate the debtor's ability to comply

20  with that agreement.  As a result, they gained the

21  property.  We're saying they're owners of the

22  property.  In fairness, since they're the owners

23  now --

24          THE COURT:  Yes, but --

25          MS. BOYNTON:  -- they acted wrongfully to

20

1   gain that property, allow us the opportunity to buy

2   out -- paid and have the property back.  We're not

3   challenging that.  We know that that's a fact, what

4   happened --

5          THE COURT:  But what would happen -- let's

6   assume, for example, I were to entertain this

7   adversary --

8          MS. BOYNTON:  Um-hmm.

9          THE COURT:  -- despite what I said, where

10  does it get you if I merely enjoin from them

11  reselling?

12         MS. BOYNTON:  Then we would ask for a hearing

13  and we would ask that --

14         THE COURT:  A hearing on what?

15         MS. BOYNTON:  We would ask for a hearing to

16  see if they acted in bad faith to violate this

17  order.

18         THE COURT:  And if they did, then the relief

19  is?

20         MS. BOYNTON:  And the relief we would request

21  is 120 days or 90 days for debtor to pay what TCF

22  paid at foreclosure sale.

23         THE COURT:  You want to establish a right to

24  sell property that your client no longer owns.  Do

25  you wish to establish that by having me carve out

21

1    such a right?

2          MS. BOYNTON:  I am asking you to, in equity,

3    to put the party back in the position they would

4    have been but for the bad conduct of TCF.  And TCF

5    is the owner of the property.  There is no third

6    parties involved here.  And I'm not asking you to

7    undo what the state court has done here.  They're

8    the owners.  But we're saying that the owners -- the

9    court can make my party whole and can make the bank

10   whole.  The bank can get their money, my client can

11   remain in his property, which is what should have

12   been done if the bank had not acted to frustrate the

13   financing.

14         THE COURT:  Why did you come in on such short

15   notice?  Is something about to happen?

16         MS. BOYNTON:  Yes, because they've entered an

17   order of possession and --

18         THE COURT:  Your client is about to lose

19   possession.

20         MS. BOYNTON:  And we believe it's up to the

21   sheriff for service.

22              And the second thing is, the other

23   reason it's an emergency is we have just got this

24   officer to agree to tender an affidavit.  It wasn't

25   an easy fact.  People don't normally --

22

1        THE COURT: All right. Now let's go back to

2   another concept, the concept of whether you could

3   have obtained -- what did you need? You needed,

4   according to your argument, a closing statement in

5   order to borrow some money for a buyer to buy from

6   your client, right? Not a closing statement.  A

7   payoff letter.

8        MS. BOYNTON: We needed a lender and we

9   needed a payoff letter.

10       THE COURT:  Okay.  Now, you were entitled to

11  a payoff letter in the stipulated order, right?  But

12  I can't find on the record any motion to compel them

13  to give the payoff letter.

14       MS. BOYNTON:  Well, your Honor, Mr. --

15       THE COURT:  -- to enforce that.  So the

16  question is how, if you did not make such a motion

17  before me to enforce that right, which was a right

18  in aid of your attempt of your client to sell the

19  building and pay off the mortgage, keep the home and

20  so forth, realize on equity that might be there,

21  whatever, if there is nothing on the record that

22  shows you sought to enforce that right to get a

23  payoff letter agreed to by them, how can you

24  possibly meet the burden to show me under Rule 60(b)

25  that this is something you couldn't have done

23

1    anything about before the dismissal?

2        MS. BOYNTON:  Well, in fact, there are parts

3    of the record which show that Mr. Langone, who was

4    representing the debtor in state court, made a

5    request of the bank for a payoff letter.

6        THE COURT:  Where?

7        MS. BOYNTON:  There is affidavits in the

8    record that's up on appeal.

9        THE COURT:  Yes.

10       MS. BOYNTON:  Yes, there are.

11       THE COURT:  Yes.  But you didn't make a

12   request here, did you?

13       MS. BOYNTON:  Well, what I believe happened,

14   and I wasn't the trial attorney, so I'm just going

15   from the record, is by the time that the financing

16   they could get, it came down real close to the wire

17   and they requested it several weeks before that.

18   They didn't get it, and they came in to get an

19   extension, from what I can tell of the record, and

20   there just was not going to be any extension of

21   time.

22            But beyond just the payoff letter, the

23   problem, Judge, was that the bank was going to these

24   lenders and saying, "If this Chris is the person

25   you're coming with to borrow money, we're not going

24

1    to do the deal." So it didn't matter if they got

2    the payoff letter. The bank was telling the

3    lender, "Don't let this person -- if this Christina

4    is the person who --"

5         THE COURT: They had entered into a

6    stipulation and there was authority in this court to

7    make sure the deal would be done. You didn't, or

8    your client, or whoever the lawyer was for your

9    client at the time, did not come here to get that

10   help.

11        MS. BOYNTON: But what I'm saying, your

12   Honor, is that this lender was willing to do the

13   deal. And so the bank said, "If Christina is the

14   person who you think you're going to borrow the

15   money from to pay us off, don't bother. Don't

16   bother having us do the loan because we're not going

17   to allow her to do the transaction." So the lender

18   said, "Okay. You know, we won't go any further."

19        THE COURT: Why is it I had so little

20   authority and power then and I have so much now?

21        MS. BOYNTON: We didn't have all this

22   evidence that --

23        THE COURT: No, no, no, no. You did not have

24   a payoff letter.

25        MS. BOYNTON: We did not have a payoff --

25

1          THE COURT:  You could not close a refinancing

2    without a payoff letter.  And you did not come here

3    to get help in getting one, although you had an

4    express right to it.

5          MS. BOYNTON:  But, your Honor --

6          THE COURT:  By "you" I don't mean you

7    personally.

8          MS. BOYNTON:  I understand.  But, your Honor,

9    the problem was --

10         THE COURT:  So you viewed me as having no

11   ability to help you at a time when help was so

12   simple.

13         MS. BOYNTON:  The problem was that --

14         THE COURT:  If, of course, the facts are as

15   you contend.

16         MS. BOYNTON:  The debtor went to 30 lenders

17   and all of them were putting him off.  It wasn't

18   just the payoff letter.  The debtor was being put

19   off.  He couldn't understand why the banks didn't

20   seem willing to deal with him.

21         THE COURT:  Well, you needed a payoff letter

22   to go to sale.

23         MS. BOYNTON:  We would have needed a payoff

24   letter.

25         THE COURT:  And you didn't have one in hand.

26

1          MS. BOYNTON:  That's correct.

2          THE COURT:  And you never came here to ask

3    for it.  Well, I mean, I'm assuming everything you

4    tell me is correct.

5          MS. BOYNTON:  Yeah.

6          THE COURT:  And the other side may feel they

7    gave you a payoff letter.  I don't know what they

8    feel.  But I cannot understand how you can possibly

9    meet the Rule 60(b) burden of showing that you had

10   no way of dealing with the problem at the time.

11   What did you know at the time, your client, your

12   client's lawyer?  He knew, they knew, they did not

13   have a payoff letter in their hands.  They also knew

14   that to get a refinancing, they had to have a payoff

15   letter, preferably in hand, so they could turn it

16   over to a prospective lender.

17         MS. BOYNTON:  And had we come to a closing,

18   it would have been that point.  But you're --

19         THE COURT:  Oh, I know.  But you're --

20         MS. BOYNTON:  -- jumping ahead.  We

21   couldn't --

22         THE COURT:  -- telling me --

23         MS. BOYNTON:  -- get there.  We couldn't get

24   there.  We knew a basic amount which we were telling

25   the lenders.  But when the lenders were confirming

27

1    whatever they were confirming, they were being told

2    by the bank, "If it's Christina, it's a no-go.

3    There is going to be no transaction."  That's what

4    was happening and that's why we never got to the

5    problem of a closing --

6         THE COURT:  It's a strange thing, you know.

7    If somebody offers a mortgage company 100 percent of

8    their loan, according to a payoff letter, which is

9    sometimes called an "estoppel letter," there is

10   nothing they can do to block a sale, block a

11   transaction.

12        MS. BOYNTON:  But they were.  And this lender

13   and affidavit says --

14        THE COURT:  I'm pointing out, Counsel, you've

15   not demonstrated or alleged something that you could

16   not have cured by coming here for relief before the

17   deadline.  Remember, the sequence was your client --

18   this is your client's second bankruptcy I think it

19   was, right?

20        MS. BOYNTON:  More than second, yes.

21        MR. WYSOCKI:  Sixth, your Honor.

22        THE COURT:  Sixth.  Sixth bankruptcy.

23        MS. BOYNTON:  He was pro se.

24        THE COURT:  Well, this time there was one

25   major change, his brother came up with a big lump of

28

1    cash.   It was either 50 or $60,000.

2           MS. BOYNTON:   60,000.

3           THE COURT:  And that bought him time, a

4    definite time.  We entered into a stipulated order

5    which provided a fixed limit on time for him to sell

6    and perhaps realize any equity because he thought

7    there was a lot of equity in the property.  And he

8    couldn't refinance or sell unless he had a payoff

9    letter, and that he knew he didn't have one in hand,

10   he could have come here to get it because it was

11   agreed to in the order and was obliged.

12          MS. BOYNTON:  But, your Honor, the lending

13   institutions weren't saying, "There is no payoff

14   letter."  They were saying, "We don't want to deal

15   with you."  And the debtor couldn't understand why.

16   Now he understands why because the bank was

17   interfering in saying, "We're not going to do a deal

18   this way."

19          THE COURT:  Counsel, it is conceivable you

20   have a tort lying somewhere in the brushes.  Some

21   tort action might come out of all this.  Number one,

22   to reopen this particular case, for the reason I

23   just articulated, I do not believe you have alleged

24   what you need to allege in order to comply with Rule

25   60(b).

29

1          But, more important, I do not believe I

2   have jurisdiction because the very issue of

3   dismissal is on appeal, and I don't believe I have

4   jurisdiction to consider it.

5          And, thirdly, you have not filed an

6   adversary which seeks relief to set aside the title

7   or to interfere with the title or to assert a tort

8   which might give you some right to interfere with a

9   title of the bank which now has title to the

10  property.  If you did, I'd have to worry about the

11  Rooker/Feldman Doctrine, and I'm not sure I have

12  authority to do that.  Apart from that, no such case

13  is related to a pending bankruptcy case.  Therefore,

14  again, I lack jurisdiction over your adversary.

15          MS. BOYNTON:  Judge, would you allow us --

16          THE COURT:  Part of the problem is that you

17  might conceivably have a cause of action under state

18  law, and you might have it under some other theory.

19  But for the reasons I indicated, I don't think I

20  have jurisdiction over your adversary or over the

21  dismissal issue.

22          Now, therefore, today at least, I'm not

23  going to do anything to grant you any relief.  Since

24  these issues have moved quickly, I will put this

25  over to another date if you want to bring in some

30

1   authority.

2        MS. BOYNTON:  I would like to do that, your

3   Honor, if we could have a very short date.

4        MR. WYSOCKI:  Your Honor, I think that if

5   there is going to be some authority, we would

6   obviously like some time to respond.  And while I

7   want to move this matter along just as much as

8   anyone, you've got to consider the fact that they've

9   been delaying the appeal of this case for the

10  purpose of coming in here to try to do this

11  maneuver, and I don't think there is really much

12  need to turn the screws on this when the initial

13  view of the court is that there is no jurisdiction.

14       THE COURT:  Well, I've given my two reasons

15  why I don't think I have jurisdiction, and I've

16  given my other reasons why I think there are

17  problems under Rule 60(b).  As one of my professors

18  used to say, that's three strikes.  But I'll give

19  you a couple days to come in here and show me some

20  jurisdiction.  Whatever you're going show me, fax

21  the cites over to counsel so he can be ready.

22            And, Counsel, whatever additional cites

23  you're going to give me, fax those cites to her.

24            Everybody bring in copies of what you

25  want to cite.  Highlight the opinions you want me to

31

1    read.  Highlight the portions you think are

2    important.

3         MR. WYSOCKI:  Yes, your Honor.

4         THE COURT:  The orders in each case will be

5    that initial hearing held and motion to vacate

6    dismissal set for further hearing without evidence.

7              What's the earliest we have some time,

8    Mrs. Hilliard.

9         THE CLERK:  Like an hour?

10        THE COURT:  An hour, yes.

11        THE CLERK:  The earliest is June 23rd at

12    11:30.

13        THE COURT:  What is it, please?

14        THE CLERK:  June 23 at 11:30.

15        MR. WYSOCKI:  Judge, would you want both

16    parties to submit simultaneously, or would you want

17    the debtor to submit first and then us to submit

18    afterwards?

19        THE COURT:  Something like that.  You can

20    file briefs if you want.  I will require a

21    supporting brief.  I think that's probably a better

22    way.

23              What's that date again, please?

24        THE CLERK:  June 23.

25        THE COURT:  Is that convenient for you folks.

32

1          MR. WYSOCKI:  It is for me, your Honor.

2          THE COURT:  What time?

3          THE CLERK:  At 11:30.

4          THE COURT:  Counsel?

5          MS. BOYNTON:  That will be fine.

6          THE COURT:  All right.  Supporting brief by

7    -- by the way, in the injunction we're talking

8    about an adversary case.  That's 00 A 527, Hanno

9    versus TCF.  Supporting brief by June 10.  Reply --

10         MS. BOYNTON:  The 10th is a Saturday.  Can we

11   go to the 12th?  That's Monday.

12         THE COURT:  Sure.  Answer by June 19th.

13   Reply by June 21.

14         MS. BOYNTON:  Would you fax that to me?

15         MR. WYSOCKI:  I'm sorry.  I got confused.

16   Would you please re-read those dates, your Honor.

17         THE COURT:  Her supporting brief by June 12.

18   Your answer by June 19, reply by June 21.

19         MR. WYSOCKI:  I will fax...

20         MS. BOYNTON:  On the 19th.

21         MR. WYSOCKI:  Sure.

22         MS. BOYNTON:  Thank you.

23         THE COURT:  I will also enter an order that

24   for reasons stated -- well, do you want an order

25   today?  Do you want a ruling today?  Counsel?

33

1          MS. BOYNTON:  No, I'll wait for the

2    supporting brief.

3          THE COURT:  Because you understand that if

4    you ask me to -- I believe in a case like this

5    you're entitled to a ruling today.  If you want to

6    take it up, I'll give you a ruling today and, for

7    reasons stated from the bench, I will deny your

8    motions.  But if you do not want a ruling today,

9    then I will wait until the June 23rd date.

10         MS. BOYNTON:  No.

11         THE COURT:  What is your pleasure?

12         MS. BOYNTON:  I'll wait until the June 23rd

13   date.

14         THE COURT:  June 23 at 11:30.  Good morning.

15              Good morning.

16         MR. WYSOCKI:  Thank you, Judge.

17         MS. BOYNTON:  Thank you.

18              (Which were all the proceedings
                had in the above-entitled cause,
19              June 7, 2000.)

20   I, GARY SCHNEIDER, C.S.R., DO HEREBY
     CERTIFY THE FOREGOING IS A TRUE AND
21   ACCURATE TRANSCRIPT OF PROCEEDINGS
     HAD IN THE ABOVE-ENTITLED CAUSE.

22

23

24

25

1              IN THE UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF ILLINOIS
2                      EASTERN DIVISION

3  IN RE:                          )
              JOHN A. HANNO,       )  No. 00 C 882
4                                  )  Chicago, Illinois
              Debtor/Appellant,    )  June 8, 2000
5                                  )  3:15 p.m.

6          TRANSCRIPT OF PROCEEDINGS - MOTION

7          BEFORE THE HONORABLE ELAINE E. BUCKLO

8  APPEARANCES:

9  For the Debtor/Appellant:

10                    MS. JULIE A. KLINGBEIL BOYNTON
                      MR. JOHN O. NOLAND
11                    LAW OFFICE OF FORREST L. INGRAM, P.C.
                      79 West Monroe Street, Suite 1210
12                    Chicago, Illinois 60603
                      (312) 759-2838
13
   For TCF National Bank:
14
                      MR. BRUCE N. MENKES
15                    MR. KENNETH R. WYSOCKI
                      DAVIDSON, MANDELL & MENKES
16                    303 West Madison Street, Suite 1900
                      Chicago, Illinois 60606
17                    (312) 251-1000

18

19

20

21
          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
22              TRANSCRIPT PREPARED BY COMPUTER

23                    MICHAEL P. SNYDER
                      Official Reporter
24              United States District Court
           219 South Dearborn Street, Room 1728
25              Chicago, Illinois 60604
                Telephone (312) 435-5563

EXHIBIT
C

          MICHAEL P. SNYDER, Official Reporter

1          THE CLERK:  2000 C 882, In re: John Hanno; for

2    motion.

3          MS. BOYNTON:  Good afternoon, Your Honor.  Julie

4    Boynton and John Noland on behalf of John Hanno, who is here in

5    court today.

6          MR. MENKES:  Good afternoon, Your Honor.  Bruce

7    Menkes and Ken Wysocki on behalf of TCF National Bank Illinois.

8          THE COURT:  Okay.  As I understand this, and I

9    certainly haven't tried to read the record to try to figure out

10   the -- the problem is that Judge Schmetterer isn't sure if he

11   has jurisdiction?

12         MS. BOYNTON:  Right, and he set a briefing schedule.

13         THE COURT:  Well, what I would end up doing, though,

14   if there is an issue of new evidence, I would just send the

15   case back to him anyway.  So why don't I just do that.

16         MS. BOYNTON:  That would be fine.  But in the

17   meantime --

18         THE COURT:  And he can decide it, and he can figure

19   it out.

20         Tell me, what's your response on -- I mean, if that

21   really does go to the issue of eviction, yes, it would be,

22   wouldn't make much sense to evict your client and then argue

23   about it.

24         MS. BOYNTON:  Exactly.  And, Your Honor, if I may

25   just give you as brief a case history as I can.

1           My client and a female individual live in the home.

2    It's also their place of business.  Both of them work out of

3    the home.  They had a golf course, a hole built in the backyard

4    that teaches disabled people golfing, and he also has a

5    business which he operates out of the home.

6           The bank and my client have been in a contentious

7    position for almost seven years litigating this case in the

8    state court.  My client filed a number of bankruptcies pro se,

9    had some problems and were to later filing a bankruptcy.

10           The bank moved to dismiss the bankruptcy, came to a

11   stipulated agreed order under which my client would have six

12   months to sell the home, and if he didn't sell by December 1st,

13   the case would be dismissed and the bank could proceed with

14   their action.

15           He was unable to sell the home.  We couldn't

16   understand why he was having trouble with financing.  We now

17   understand why he was having trouble with financing.  The case

18   was dismissed on December --

19           THE COURT:  What do you mean?  If somebody -- either

20   somebody bought it or somebody didn't buy it.

21           MS. BOYNTON:  Well, the problem --

22           THE COURT:  That part I didn't understand.

23           MS. BOYNTON:  What we have learned later is that the

24   female individual in the home was going to purchase the

25   property, and she would go to various companies to get

1   financing.  When the lender would call, they say, "We need a

2   payoff letter."  The bank would tell them:  If this is the

3   individual you are dealing with, we are not going to sell even

4   if she pays the full price, don't deal with her.

5          And they refused to give a payoff letter to the

6   lenders.

7          We just learned about this, and there is an affidavit

8   from the lender stating that that's what was happening.  So the

9   bank --

10         THE COURT:  Why did you just learn about this?

11         MS. BOYNTON:  Well, this isn't the kind of thing that

12  lenders normally come forward and tell you.  We just happened

13  to have --

14         THE COURT:  What do you mean?  A lender who is going

15  to give a loan, because they are so subject to so much

16  liability for all kinds of discriminatory, you know, I mean, if

17  they engage in a discriminatory practice.  In fact, I think

18  that they are required by law to tell somebody why they are not

19  giving them a loan.

20         MS. BOYNTON:  Well, they were giving the reasons that

21  they weren't able to get the payoff letter, so they were giving

22  other reasons.  We didn't understand the letter until this

23  banker, this lender came forward and told my client what

24  actually was going on, that the bank was frustrating the

25  efforts of my client to comply with the order.  And so when we

1  discovered this, that really the reason --

2          THE COURT:  So you are saying your client couldn't

3  find out that they refused to give then a payoff letter?

4          MS. BOYNTON:  They were just saying:  We are not

5  going to give you the loan.

6          This was a jumbo loan, it's $600,000 or $500,000

7  loan.  I don't know what reasons they were giving, but they

8  weren't telling us the true reason that the bank was

9  frustrating.

10          THE COURT:  Okay.  I mean, that's, I just was

11  wondering about that.

12          What is your response to that?

13          MR. MENKES:  Well, first of all, the facts which are

14  being related are not correct.  In particular --

15          THE COURT:  Shouldn't those really be before the

16  bankruptcy judge and not me?

17          MR. MENKES:  I think it should be before the

18  bankruptcy judge, Your Honor.

19          One thing you are not being told is the order which

20  counsel is seeking to overturn by asking for a stay today is an

21  order which was entered by the Cook County, Circuit Court of

22  Cook County on April 27th by Judge Egan awarding possession on

23  May 30th.  That's the order.

24          THE COURT:  Is that the jurisdictional issue?  I

25  thought it was a question of jurisdiction between the

1  bankruptcy judge and me.

2         MR. MENKES:  Oh, they are both here, Your Honor.  We

3  think that, with all respect, this Court lacks jurisdiction to

4  enter any sort of stay for two reasons:  First, most

5  importantly is the Rooker-Feldman doctrine, which Judge

6  Schmetterer recognized --

7         THE COURT:  Yes, I didn't understand we were talking

8  about some Circuit Court judge.

9         MR. MENKES:  Unfortunately, that's not included in

10 the papers that were filed.  We have a copy for the Court of

11 that Circuit Court judgment that was entered on the 27th.

12         This is the fourth forum.

13         THE COURT:  Why don't you go up to the state

14 appellate court?

15         MR. MENKES:  They did, Your Honor, and they were

16 denied.

17         MS. BOYNTON:  And the reason being this, Your Honor.

18 I don't think the state court has a good grasp.  What happened

19 is, although the case was dismissed on the 2nd in state court,

20 or here, for them to go for the foreclosure to get confirmation

21 of the foreclosure sale, it was not entered on the docket until

22 December 7th.  On December 6th, the bank filed the motion

23 asking for confirmation of the sale, clearly in violation of

24 the automatic stay, which was still in effect until the case

25 was technically dismissed on December 7th.

1          So the order that they got confirming the sale was an

2   order obtained in violation of the automatic stay, and that is

3   on appeal to the appellate court and hasn't been resolved yet,

4   but I am not sure the trial court understood the ramifications

5   of the automatic stay.

6          THE COURT:  Okay.  What do I do with, whatever it is,

7   Rooker-Feldman?

8          MS. BOYNTON:  Well, Rooker-Feldman really isn't

9   applicable here.  What we are saying --

10         THE COURT:  It does say I can't --

11         MS. BOYNTON:  What we are saying --

12         THE COURT:  Yes.  Why wouldn't it be applicable?

13         MS. BOYNTON:  Because what we are asking is the bank

14   be enjoined from executing that order of possession they

15   obtained wrongfully based upon --

16         THE COURT:  But this is an order of possession they

17   got from a state court.

18         MS. BOYNTON:  Right, and they should be not able to

19   execute that order given the wrongful conduct.  They frustrated

20   my client's ability to comply with the order which led to this

21   dismissal in their obtaining that order.  So all we are asking

22   for the Court is at least give us time to present this

23   evidence.  If the bank acted wrongfully, they certainly

24   shouldn't be allowed to put my client into the street.

25         MR. MENKES:  Your Honor, exactly what counsel is

1  attempting to do is exactly overturn that order.  That order,

2  which I have a copy of here, the natural consequence of that

3  order is that the sheriff will then proceed with the eviction.

4  She is attempting to ask this Court to enjoin the Sheriff of

5  Cook County from doing that eviction.

6          MS. BOYNTON:  I'm not asking the Sheriff to do

7  anything.  I am asking that this bank be enjoined from

8  executing the order that they have to obtain possession.  It's

9  a different issue.

10          MR. MENKES:  This argument was made to Judge

11  Schmetterer, and we have the transcript here, yesterday.  He

12  recognized it for what it is, just an attempt to get around the

13  Rooker-Feldman doctrine by pretending that we are in control of

14  what happens.

15          MS. BOYNTON:  I think, if you look at the transcript,

16  you will see that --

17          THE COURT:  Okay, let me see the transcript.  Let me

18  see the state court order too.

19          MR. WYSOCKI:  (Tendering.)

20          THE COURT:  Thank you.

21          I am sure he has a better grasp of this stuff than I

22  do.

23          MR. MENKES:  We had quite a bit of discussion about

24  the Rooker-Feldman doctrine, Judge.

25          THE COURT:  The thing that was before the bankruptcy

1  court was, or that's actually before me on appeal is just that

2  the bankruptcy court dismissed the bankruptcy petition, right?

3          MS. BOYNTON:  That's correct.

4          THE COURT:  It doesn't actually even have to do with

5  the rest of this.

6          MR. MENKES:  Correct, Your Honor.

7          MS. BOYNTON:  Right, but the 9024 motion, which is

8  why we are asking it to stay, does --

9          THE COURT:  But, I mean, the eviction was not, and

10  all of that really wasn't before the bankruptcy court except

11  insofar as filing bankruptcy stays everything else, isn't that

12  correct?

13          MS. BOYNTON:  No, that's not true, because the

14  parties entered into a stipulated agreement which said debtor

15  had from April 1st to December 1st to sell his home, and it was

16  a stipulated order entered into with the bank, and if he

17  couldn't sell the home within that time period, then the

18  bankruptcy would be dismissed with 180-day buyers.  That's why

19  it's underlying the whole case, their actions which resulted in

20  the dismissal.

21          THE COURT:  But the bankruptcy appeal would be or the

22  bankruptcy would be dismissed, but --

23          MS. BOYNTON:  But what we are saying now is but for

24  the bank's wrongful actions in frustrating the debtor's ability

25  to comply with the stipulated order and sell the house, he --

1          THE COURT:  Okay.  I am not done reading it.  A

2   thought had just occurred to me.

3       (Pause.)

4          THE COURT:  All right.  Well, I guess I'm still not

5   done, but it's clear that it wasn't just his concern that this

6   case was now before me that, behind his order.

7          Well, he seems to be saying what I was getting at,

8   just in terms of my first thought on the thing was that it

9   doesn't make a lot of sense to say that he wouldn't have had a

10  remedy back before it was too late.  I mean, if he couldn't get

11  a payoff letter, and, as he says, you know, you could have come

12  in then and said, "Gee, we came close, but we can't get a

13  payoff letter," and --

14         MS. BOYNTON:  But, you know, as I tried to explain to

15  the Judge, it wasn't that we ever got to the point that we

16  could have a closing and needed a payoff letter, because it was

17  being cut off before it got to that point.  When the lenders

18  were calling TCF, they were just saying:  If Christina is the

19  person you are going to be giving this loan to, there is not

20  going to be a transaction; we are not going to agree to a

21  transaction or accept a payoff from her.

22         THE COURT:  But all they had to do -- wait a minute.

23  Let's just think this thing through.

24         What did they have to agree to, as Judge Schmetterer

25  said better than I did a little bit ago?  They didn't have to

1   agree?  I mean, if I have a loan with the First National Bank,

2   and I want to sell the place, they don't have any -- you know,

3   if I enter into a sale with somebody and they get a loan, First

4   National Bank has, you know, they can say how much they want,

5   but they don't have any say about the whole thing.

6            MS. BOYNTON:  And we --

7            THE COURT:  They can't cut off my right to sell the

8   property or somebody else's right to buy it.  So, wait a

9   minute, this, it just doesn't make any sense.

10            MS. BOYNTON:  We agree with that.  They should have

11   been forced to accept full payment, which had been offered to

12   them on more than one occasion.  But what they were telling the

13   lenders when they came in, this transaction isn't going take

14   place, and we didn't find out that that's what they were

15   telling --

16            THE COURT:  They didn't have any option on that.  You

17   know, factually I just can't -- there are a lot of problems

18   with this, but factual, you know, if I looked at it that way

19   and assumed I had any jurisdiction, it's very clear that if I

20   sent this back to Judge Schmetterer, what he would say is just

21   what he said there, it wasn't just -- I agreed to hear this on

22   an emergency basis because I thought, well, you know, if he's

23   just concerned that he doesn't have jurisdiction because it's

24   on appeal, and there is some new evidence that could be brought

25   before him, then, yes, indeed, maybe there is something here

1   to, that it ought to be heard and dealt with.

2           But it's very clear that he would reach the same

3   conclusion, one, that he doesn't have any jurisdiction because

4   there just isn't anything left before him because this was the

5   sale that was confirmed by the state court after he had

6   dismissed it, and, two, that if he did, he wouldn't grant your

7   Rule 60 motion because it doesn't make any sense.

8           MS. BOYNTON:  But, Judge, we know this lender, and

9   this lender on his affidavit said they, you know, that they

10  could have provided sufficient funds to pay off the bank.  But

11  it was their conversations with the bank which interfered with

12  their further processing of the loan, so the bank at least --

13          THE COURT:  How could they interfere?

14          MS. BOYNTON:  Whatever they --

15          THE COURT:  There is no -- I mean, just, it just

16  doesn't make any sense.  There isn't any legal interference

17  that they could have run.

18          MS. BOYNTON:  They obviously told something to this

19  lender, which the lender is saying that that was the basis for

20  their not proceeding further, was their conversations with the

21  bank, which was their reason for not proceeding further.  I

22  don't know exactly what other, you know, what the bank --

23          THE COURT:  Well, the time to do something was then,

24  and if -- and I don't think I believe that other lender at this

25  point in time because it doesn't make any sense.  I don't know

1   why they didn't want to give somebody a loan, but it just can't

2   be true that they couldn't have gotten the payoff letter.

3           At any rate, the time to have done something, if he

4   thought there was a problem with getting the loan, is that I

5   don't have any jurisdiction. It doesn't sound like the

6   bankrupt court does. I can't, I can't do anything. Your

7   remedy, if any, is with the state court and/or some action

8   against some lender, but I am not sure which one it is. I

9   can't interfere with this.

10          MS. BOYNTON: Could I just have one moment, please?

11          THE COURT: Yes.

12      (Pause.)

13          MS. BOYNTON: Your Honor, my client is telling me

14   that what the bank said is that Mr. Hanno had pending

15   litigation with the bank, and that the bank was just straight

16   out refusing to allow the property to be sold unless the

17   lawsuits were dropped. That's what they told the lender.

18          THE COURT: Then they should have come to the

19   bankruptcy court when there was still jurisdiction over it.

20          MS. BOYNTON: We didn't know about that until

21   recently. The lender has just told us this information.

22          THE COURT: There isn't any jurisdiction at this

23   point. This was a sale that was confirmed. The bankruptcy

24   court is right. I don't think the bankruptcy court had any

25   further jurisdiction. Now, there might be something as far as

1  sanctions I guess against, you might be able to go in maybe and

2  ask the bankruptcy court for sanctions, and to the extent there

3  are damages, if the lender violated an agreement and interfered

4  in some way.  But as far as stopping an eviction on a sale that

5  has taken place, that was really, you know, it's gone.

6        MS. BOYNTON:  I guess we are saying, Your Honor,

7  though, is the bank, the bank was the high bidder at the sale.

8  The bank now owns the property.  The bank, whose wrongful

9  conduct resulted in the property not being my client's, should

10  not be allowed to benefit by having him removed and have to

11  fight it later for a money judgment when in equity he would

12  be --

13        THE COURT:  I don't have any jurisdiction.  I can't

14  do anything about that.  There just is no jurisdiction.  And

15  the only thing you can do is, I mean I guess if there is

16  anything left on the appeal, you know, I'll consider whether it

17  should go back to the bankruptcy court to see if there is, they

18  should really look at it in terms of sanctions.  But there

19  isn't anything that can be done about the sale.

20        MS. BOYNTON:  And I guess we are not asking -- for

21  these purposes, we are facially accepting that the sale has

22  taken place, that the ownership has been transferred, that

23  there is an order of possession.  What we are asking is until

24  the Court can determine if the bank acted wrongfully and

25  impeded and put my client in this position, which is only till

1   the 23rd when we'll be back before the Judge, if they can stay

2   this act of possession, if the Court decides that they did act

3   wrongfully and that the bankruptcy should have been dismissed,

4   that he should have been able to proceed and keep the property.

5   The bank could still be ordered to sell it back for what they

6   got at the sale.  We are not challenging the state court

7   actions.  We are not challenging them per se.  We are asking

8   for 105 relief in equity to put my client back in the position

9   he would have been but for the wrongful conduct.

10          THE COURT:  I think that Judge Schmetterer is right.

11   I don't think there is any jurisdiction at this point except

12   for a motion for sanctions.

13          MS. BOYNTON:  Would the Court be willing to remand it

14   back down to at least hear the 9024 motion?

15          THE COURT:  Do you have any objection to that?

16          MR. MENKES:  I think Your Honor was correct.  I think

17   that they can achieve the same thing by simply doing what they

18   said they would do at the end of the hearing before Judge

19   Schmetterer.  He asked if they wanted an appealable order, and

20   they said, "No, we'll go through with the briefing schedule,"

21   which has already been set in that court.

22          MS. BOYNTON:  But that was with respect to the issue

23   of jurisdiction.  If we brief it and the ruling is going to

24   come up here and get a remand, it just seems silly to go

25   through the briefing when that's what the ultimate result is

1 going to be.

2        THE COURT:  Well, if it is agreed with the parties,

3 I'll remand the appeal to, because of this motion, to Judge

4 Schmetterer and let him figure it out.  He's got more time than

5 I do to figure this out, and he knows a lot more as to whether

6 there is any remedy for a violation of his order, if he thinks

7 there was one.  But I'm not staying the sale.  That you'd have

8 to take up before -- or the eviction.  That you'd have to take

9 up before him.

10        MR. MENKES:  We do, we do object to the remand, Your

11 Honor.  I think it would be reasonable to do it, but I think

12 that they brought the issue here to this Court and asked for a

13 decision, and that's the decision.

14        MS. BOYNTON:  Your Honor, we brought it here because

15 there was a question of jurisdiction of whether Judge

16 Schmetterer could hear it, and the proper procedure is just

17 going to be that --

18        THE COURT:  Well, the question of not being able to

19 hear it because there is an appeal pending, I don't know.

20 Actually, I better go look at that.  I'm not sure.

21        MS. BOYNTON:  And, Your Honor, there is really no

22 case, there is nothing on point except for the -- we do have

23 some cases with respect from the District Court to the Seventh

24 Circuit, and the proper issue would bring it into the District

25 Court, have them certify it, it goes up, and then the Seventh

1  Circuit will remand it back for further hearings in a 60(b).

2  So we believed we were following the correct procedure by

3  first, you know, filing it in the bankruptcy court.

4        MR. NOLAND  Judge, if I might just in a real brief

5  nutshell explain the jurisdictional procedures for filing a

6  60(b) motion during a pending appeal.  This is in the context

7  of a district court case appealed to the Seventh Circuit, and

8  case law explicitly on point provides that -- and in this case

9  I'll refer to the appellate court as the reviewing court to

10 analogize it here.

11       THE COURT:  Right.

12       MR. NOLAND  -- that in a pending appeal, the proper

13 procedure is pursuant to the Seventh Circuit's local rules and

14 Seventh Circuit opinion on point, which we can cite and provide

15 and give copies of, that the 60(b) motion is filed.

16       The lower court then reviews the briefing on the

17 60(b) motion and issues a memorandum which recommends if the

18 lower court would be likely to grant the 60(b) motion.  That

19 recommendation is sent with a motion to the reviewing court

20 which then may decide to remand the case or that issue.

21       THE COURT:  Okay.  Well, if that's the case,

22 shouldn't I just wait and see?  Judging by the transcript, it

23 didn't sound to me like he was likely to, but why can't, if he

24 wants to give me a memo saying that he probably would, of

25 course I'll remand it.  Why don't we just -- did I cut you off

1  too quickly?  If I heard you right, you should just go ahead

2  with your briefing before him.  If he decides that he thinks

3  that there would be a remedy, then he just has to tell me that

4  he thinks maybe it would be a good idea if I remanded it, and I

5  will do it immediately.

6         MS. BOYNTON:  The problem with waiting for the

7  remand, Your Honor, is that then we have no place to go for a

8  stay here.  I mean, if you are saying you don't have

9  jurisdiction to give a stay here and I can't get it remanded

10  back there till the 23rd --

11         THE COURT:  Well, I don't see it, but if he somehow

12  thinks that he can find jurisdiction, and his only issue is

13  that, well, it's up here, and he thinks he would grant relief,

14  well, I suppose there might be a separate one where I thought

15  he was wrong, but I --

16         MS. BOYNTON:  Because they have already, based on

17  what we believe, they have already placed the order with the

18  Sheriff.  So if, you know, if it is going to be --

19         THE COURT:  I know.  What would be my basis for

20  granting your relief?

21         MS. BOYNTON:  Likelihood of success under 9024(b).

22         THE COURT:  Well, how can I find that?  You are

23  briefing that before Judge Schmetterer.  He's indicated that

24  he's, at least in the transcript before briefing, that he's

25  skeptical as to whether you could get relief.

MICHAEL P. SNYDER, Official Reporter

1        MS. BOYNTON:  I guess --

2        THE COURT:  I am skeptical too, so I can hardly say I

3   think it's likely that you are going to get relief.

4        MS. BOYNTON:  Actually we are not even getting to the

5   9024 issue, which is why I want to get -- I mean, if we can get

6   rid of that issue so that we can actually have the 9024 heard

7   there, all we are briefing right now is jurisdiction, and then,

8   if we decide that, where the jurisdiction properly lays, then

9   he will hear the 9024.

10       THE COURT:  Well, but if he's right on that, I mean,

11  he can't hear it if he doesn't have jurisdiction, so basically

12  what you are briefing right now I suppose is the Rooker-Feldman

13  doctrine and whether there is anything for a bankruptcy court

14  to hear after a sale has, a sale has taken place and been

15  confirmed, as he noted, although I thought the law was fairly

16  settled that it didn't, a sale didn't, final sale didn't take

17  place until confirmation, but in this case that has occurred.

18       MR. NOLAND  I think, Judge, also that the bankruptcy

19  court would review whether that sale and/or confirmation of

20  sale violated the stay.

21       THE COURT:  Well, as my law clerk reminded me, he

22  came up here if you are wondering who is wandering around here,

23  I mean, there is an exception to the Rooker-Feldman doctrine

24  when there's been extrinsic fraud, but I think that's what

25  you'd have to go show.  But you have got to show this to the

1  bankruptcy court, not to me, if there is any fraud, and that

2  would be in terms of the state court.

3          MS. BOYNTON:  I guess I am somewhat frustrated

4  because we are not challenging for these purposes the

5  underlying judgments.

6          THE COURT:  Well, why couldn't you get relief in the

7  state court?

8          MS. BOYNTON:  We may.  I mean, it's on appeal.

9          MR. MENKES:  Your Honor, they have moved both the

10  appellate court and the eviction court.

11          THE COURT:  This Court is so far removed from all of

12  this that it seems to me that, you know, as the last place that

13  you really can go looking for any relief at this point.

14          I'll take a look at the rule and see if I can just

15  remand everything to the bankruptcy court at this point.  If I

16  can, then maybe you can save a step.  But it clearly would be

17  before him initially at best and not before me.  I'll go back

18  and look at that.  I think I have one more motion I have to

19  hear, but I don't, I wouldn't hold out a lot of hope if there

20  is about to be an eviction.  It sounds like this is one of

21  those cases where, I mean, the bank doesn't want to hold the

22  thing.  They are going sell it to somebody.  Why would a bank

23  care who they sell it to anyway?

24          MS. BOYNTON:  Because they want to punish him for

25  putting them through this litigation.  I mean, this is still

1  ongoing litigation, and that's what we believe, that they are

2  acting in bad faith to punish him for bringing the cases.  It's

3  always been we won't do anything with you until you drop your

4  lawsuits against us for our violations of the federal

5  regulations.  That's been their position all along.  We won't

6  take a full payoff from you, we just won't do it.  And that's

7  how they have acted through the entire proceedings for seven

8  years.

9          MR. MENKES:  Judge, I don't want to let this go by

10  without noting for the record that that's false, and at the

11  appropriate time before Judge Schmetterer, if it comes to it,

12  we'll present witnesses to show it's false.

13          THE COURT:  Okay.  You won't get anything by standing

14  here further.  I will take a look.  It just doesn't come up

15  very often that I -- I don't get many things from bankruptcy

16  court, and it's, I don't remember offhand or know that well

17  when I can just remand something.  So I'll go look at the rule,

18  and if I can just do it at this point, it's fine with me.  But,

19  otherwise, you will have to see what you can do to get him to

20  deal with it.

21          But I don't, it's clear I wouldn't, this wouldn't be

22  the appropriate court to have such a hearing.  I am skeptical

23  as to whether there is jurisdiction generally, but I am sure

24  that Judge Schmetterer knows more about the ins and outs of

25  foreclosures and bankruptcy court and how that works than I do.

1  But I'll see.

2           MR. MENKES:  Thank you, Judge.

3           THE COURT:  Thank you.

4           MS. BOYNTON:  Thank you.

5           MR. NOLAND  Thank you.

6       (End of proceedings.)

7                    C E R T I F I C A T E

8           I, Michael P. Snyder, do hereby certify that the

9  forgoing is a complete, true, and accurate transcript of the

10 proceedings had in the above-entitled case before the Honorable

11 ELAINE E. BUCKLO, one of the judges of said Court, at Chicago,

12 Illinois, on June 8, 2000.

13

14                    _____

15                    Official Court Reporter

16                    United States District Court

17                    Northern District of Illinois

18                    Eastern Division

19

20

21

22

23

24

25

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

IN RE:                          )
                                )
JOHN A. HANNO,                  )           98 B 36360
                                )
        Debtor.                 )           The Hon. Jack B. Schmetterer
                                )           Presiding

### AFFIDAVIT OF JIMMY D. ANTONOPOULOS

STATE OF ILLINOIS       )
                        )
COUNTY OF COOK          )

JIMMY D. ANTONOPOULOS having been first duly sworn upon oath, deposes and states as follows:

1.      My name is Jimmy D. Antonopoulos.  I am over the age of 18 years and I am competent to make this affidavit.  I have personal knowledge of the statements made herein, all of which are true and correct.  Pursuant to 28 U.S.C. § 1746, I declare and certify under penalty of perjury that the statements set forth in this Affidavit are true and correct.

2.      I am clerk with the law firm of Davidson Mandell & Menkes, counsel for TCF National Bank Illinois in this matter. On November 30, 1999, I delivered a copy of the attached letter and pay-off statement to the office of Robert Adams, counsel for the debtor in this case.

Dated: __12/21/99__

_____
JIMMY D. ANTONOPOULOS



EXHIBIT
D

# DAVIDSON MANDEL
# & MENKES

Suite 1900
303 West Madison
Chicago, Illinois 60606
Telephone (312) 251-1000
Fax (312) 251-1010
E-Mail cgmm@cgmm.com

November 30, 1999

**By Messenger**

Mr. Robert J. Adams
Robert J. Adams & Associates
105 W. Madison Street
Suite 1100
Chicago, Illinois 60602

    Re:  *In re Hanno, 98 B 36360*
      Our File No. 2471

Dear Mr. Adams:

  Enclosed is a copy of the Pay-Off Statement which you first requested yesterday, November 29, 1999.

        Sincerely,

        Kenneth R. Wysocki

KRW:vh
39935.1

Enc.

## PAYOFF STATEMENT

| MAKE CHECK PAYABLE TO | | | | STATEMENT DATE |
|---|---|---|---|---|
| TCF MORTGAGE CORPORATION | ESCROW NUMBER | ORDER NUMBER | AMENDED STATEMENT | 11/30/99 |
| 801 MARQUETTE AVE | | | N | |
| MINNEAPOLIS, MN 55402 | | | | |

| | INTEREST RATE | FIXED RATE LOAN | ARM/VRM | TELLER NUMBER |
|---|---|---|---|---|
| | 9.000% | N | Y | 0000 |

THIS LOAN IS IN FORECLOSURE

| | YES | NO | | |
|---|---|---|---|---|
| | | X | THIS STATEMENT EXPIRES 3:30 P.M. | 12/16/99 |

PROPERTY ADDRESS

| LOAN NUMBER | INVESTOR CODE | |
|---|---|---|
| 710001556 | 581 | |

6 North Trail Court

Lemont, IL 60439-9757

| LOAN TYPE | LOAN SUB-TYPE |
|---|---|
| | |

| STATEMENT SENT TO | MORTGAGOR'S NAME AND ADDRESS |
|---|---|
| STANDARD FINANCIAL | JOHN A. HANNO |
| | 6 NORTH TRAIL COURT |
| | LEMONT, IL 60439-9759 |

| INTEREST PAID YEAR-TO-DATE | INTEREST PAID YEAR-TO-DATE | HUD MORTGAGE INSURANCE PAID YEAR-TO-DATE | MORTGAGE INSURANCE YEAR-TO-DATE | ESCROW/IMPOUND BALANCE | INTEREST BUYDOWN BALANCE |
|---|---|---|---|---|---|
| 0.00 | | | | 0.00 | 0.00 |

| ESTIMATED DISBURSEMENTS | | | INTEREST CALCULATION FOR THIS STATEMENT | | | |
|---|---|---|---|---|---|---|
| DISBURSEMENT TYPE | NEXT DUE | AMOUNT | INTEREST RATE | CALCULATED FROM DATE | CALCULATED TO | INTEREST TO BE CHARGED |
| | | | 9.000% | 7/23/98 | 12/2/99 | 46,346.32 |

| IF ANY DUE DATES ARE PRIOR TO EXPIRATION DATE OF THIS STATEMENT. THE AMOUNTS MAY HAVE BEEN INCLUDED IN REUIRED FUNDS ON ASSUMPTION THESE FUNDS WILL BE EXPENDED PRIOR TO PAYOFF | TOTAL INTEREST TO BE CHARGED | 46,346.32 |
|---|---|---|

### PAY-OFF AMOUNT CALCULATIONS

| | | |
|---|---|---|
| NET OUTSTANDING BALANCE | | 382,373.40 |
| INTEREST CALCULATED TO | 12/2/99 | 46,346.32 |
| ESCROW/IMPOUND ADVANCE BALANCE | | 13,792.69 |
| PREPAYMENT FEE | | 0.00 |
| STATEMENT FEE | | 0.00 |
| FAX STATEMENT FEE | | 0.00 |
| TOTAL OTHER FEES | | 0.00 |
| TOTAL REQUIRED TO PAY-OFF | | 442,912.91 |

| PER DIEM RATE | FUNDS RECEIVED ON OR AFTER | MUST INCLUDE LATE CHARGE | FUNDS RECEIVED ON OR AFTER | MUST INCLUDE LATE CHARGE |
|---|---|---|---|---|
| N/A | N/A | N/A | N/A | N/A |

## IMPORTANT INFORMATION

- FUNDS MUST BE IN FORM OF CASHIERS OR CERTIFIED CHECK AND PAYABLE AS NOTED ABOVE

1

 1         IN THE UNITED STATES BANKRUPTCY COURT
               NORTHERN DISTRICT OF ILLINOIS
 2                   EASTERN DIVISION

 3

 4    In re:                    )
                                )   No. 98 B 36360
 5    JOHN HANNO,               )   Chicago, Illinois
                                )   December 28, 1999
 6              Debtor.         )   11:00 a.m.

 7

 8              TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE JACK B. SCHMETTERER
 9

10
      APPEARANCES:
11
      MR. ROBERT ADAMS
12    on behalf of John Hanno;

13    MR. KENNETH R. WYSOCKI
      on behalf of TCF National Bank Illinois.
14

15    ALSO PRESENT:

16    JOHN HANNO.

17

18

19

20

21

22

23

24

25

EXHIBIT

E

2

1          .      THE CLERK:  John Hanno, 98 B 36360.

2          MR. ADAMS:  Good morning, your Honor.  For

3   the record, my name is Robert Adams, the attorney

4   for John Hanno.  John Hanno is in court.

5          MR. WYSOCKI:  Good morning, your Honor.

6   Kenneth R. Wysocki on behalf of TCF National Bank

7   Illinois.

8          THE COURT:  Good morning, folks.  I've read

9   the following:  Debtor's motion to vacate the order

10   of dismissal, the order of dismissal that was

11   entered by Judge Katz.

12          MR. ADAMS:  Do you want a copy of it?

13          THE COURT:  Then there was a -- what?

14          MR. ADAMS:  You had asked for a copy of the

15   order.

16          THE COURT:  Yes, pass it up, please.  I guess

17   it was attached here, however.

18                    (Document tendered.)

19          THE COURT:  The response to the debtor's

20   motion to vacate that order, and then an affidavit

21   was filed by Mr. Hanno yesterday.

22                    Did you get it?

23          MR. WYSOCKI:  Judge, we did not get the

24   complete matter.  I don't know if your Honor would

25   like to address it now or not.  I would like to

3

1   orally request that that document be stricken for a

2   number of reasons.

3        THE COURT:  All righty.  I'd like to find out

4   whether Mr. Hanno's lawyer has anything additional

5   to state.

6        MR. ADAMS:  Yes, your Honor.  During the

7   course of the hearings before confirmation, your

8   Honor said that the case would be dismissed on or

9   about December 1st.  However, a basis for continuing

10   the case beyond December 1st would arise if, in

11   fact, there was a contract to purchase the property.

12        Sometime in November there was a

13   contract to purchase the property, and there has

14   been a pre-approval of the mortgage.  We did put in

15   our motion that an attorney who represented Mr.

16   Hanno in another matter had requested a payoff

17   balance.  He wrote a letter to me to that effect.

18   However, upon further inquiry, he's not in a

19   position to reduce this to an affidavit or testify.

20   He says he believes he did it via phone call or in

21   person.

22        The only request I made for a payoff

23   balance was a few days before the December hearing,

24   and, of course, they did comply with that.  Mr.

25   Hanno does not believe the amount in the payoff is

4

1    correct.  He is looking for an accounting.

2                   He does have a buyer for the property.

3    I don't think there is any prejudice if, in fact,

4    the property is sold.  He would certainly have to

5    maintain his mortgage payments for any period beyond

6    the date of dismissal if the dismissal were vacated.

7          THE COURT:  You've not said anything about

8    the fact that the sale was held, the foreclosure

9    sale was held and confirmed.

10         MR. ADAMS:  Well, if your Honor --

11         THE COURT:  What ownership right does your

12   client have under state law in the light of that

13   fact?

14         MR. ADAMS:  As we stand here right now, he

15   has done.  If your Honor were to vacate that order

16   nunc pro tunc, then that order confirming the sale

17   would be invalid.

18         THE COURT:  You say that your client has a

19   contract.

20         MR. ADAMS:  Yes.

21         THE COURT:  Mr. Hanno in his affidavit

22   attaches various documents.  Are you referring to

23   those documents?

24         MR. ADAMS:  I don't know.

25         THE COURT:  You've not seen it?

5

1        .   MR. ADAMS:  I told Mr. Hanno that he could

2   not file an affidavit like this.  He did it anyway,

3   so --

4           THE COURT:  Do you have a contract to sell?

5           MR. ADAMS:  Yes, your Honor.

6           THE COURT:  Will you show me what you're

7   talking about?

8           MR. ADAMS:  Yes.  I have a few items here,

9   and I want to be able to give counsel a copy of

10   whatever I hand your Honor.

11           MR. WYSOCKI:  Thank you.

12                   (Document tendered.)

13           THE COURT:  Are you Christopher Langone?

14           MR. ADAMS:  No.  That's...

15           THE COURT:  Are you Christopher Langone?

16           MR. WYSOCKI:  No, sir.  Mr. Langone is Mr.

17   Hanno's state court attorney in a civil action.

18           THE COURT:  Oh, I see.  He tried to

19   communicate about getting the case settled.  Is that

20   it?  That's what you attached here as Exhibit M?

21   M?

22           MR. WYSOCKI:  Yes, your Honor.  It's our

23   position that what Mr. Langone thinks was a request

24   for a payoff letter was actually the voice mail that

25   we attach as an exhibit to our response.

6

1          .   THE COURT:  All right.  You've just handed

2     me, sir, something that your client attached to his

3     affidavit, something called a preliminary approval

4     for a loan.

5          MR. ADAMS:  Maybe I didn't give you the

6     contract.  I apologize, your Honor.

7          THE COURT:  I take it you have a contract?

8          MR. ADAMS:  Yes, I do.

9                    (Document tendered.)

10         THE COURT:  Under this contract Mr. Hanno's

11    friend, Christina, offers to purchase for $500,000

12    subject to the existing mortgage, not paying off the

13    existing mortgage; is that right?

14         MR. ADAMS:  No.

15         THE COURT:  Certainly by reason of the first

16    document you handed to me, the preliminary approval,

17    it tends to indicate that the property is appraised

18    for $475,000 and, therefore, they would give a loan

19    of only $391,000.  So on the face of what you've

20    handed to me, you can't take out the existing

21    mortgage; isn't that right?

22         MR. ADAMS:  Well, they would have to pay off

23    the existing mortgage.

24         THE COURT:  Out of what?  There is no tooth

25    fairy.

7

1          .      MR. ADAMS:  I can only presume that --

2              THE COURT:  You have no mortgage commitment

3     for more than 391,000.  And this contract,

4     so-called, by his friend to purchase was not a

5     contract to come up with financing.  There was

6     another document that your client attached where she

7     entered into an offer conditional on getting the

8     mortgage.  But then later she entered into this

9     agreement which is not conditional on getting a

10    mortgage, but which assumes that she could purchase

11    subject to the existing mortgage.  And based on the

12    preliminary approval of mortgage that you handed to

13    me, it seems quite evident that she could not get a

14    $475,000 mortgage on this property.  So we have no

15    contract which will take out this loan even at this

16    late date.

17              Counsel, the agreement that was entered

18    into, that is an agreed order entered into under

19    which Judge Katz ruled, gave a certain fixed time

20    for your client to sell the property.  Even a month

21    later your client is still not ready to sell the

22    property and take out the present mortgage loan.

23    The whole idea was he'd have about, I don't know,

24    five or six months, I forget the exact period, to

25    sell the property.  His brother came up with some

8

1    $60,000 of which the bank got a good part of that,

2    but not all of it, and, in effect, this purchase

3    time for him to sell, but he didn't sell.

4         MR. ADAMS:  But he does have a contract with

5    him to --

6         THE COURT:  He does not have a contract to

7    sell that is meaningful.  There is no contract that

8    you've handed to me to sell that would take out this

9    existing mortgage.

10        MR. HANNO:  Can I say something?

11        THE COURT:  No, sir.  I think I've heard --

12   I've read your affidavit, Mr. Hanno.  I've read

13   these documents very carefully.

14             And, of course --

15        MR. HANNO:  Your Honor --

16        THE COURT:  -- we get to the ultimate that

17   there was no stay on the order dismissing this

18   case.  That meant that they were no longer bound by

19   the automatic stay and could proceed to get the sale

20   confirmed, which they did.  The state court has

21   confirmed the sale, and that means that your

22   client's interest is gone under Illinois law.  There

23   is nothing to do under bankruptcy law once that

24   happens, and there are no equitable reasons for me

25   to try to do anything fancy because you don't have a

9

1   real contract to purchase that would take out the

2   mortgage.

3           I suspect that if you did, they might

4   be delighted to get their money, but there is

5   nothing afoot to do that.

6           MR. HANNO:  Your Honor, can I say something,

7   please?

8           THE COURT:  Mr. Hanno?

9           MR. HANNO:  I can explain this pre-approval,

10   your Honor.

11           THE COURT:  No, I'm not going to take any

12   testimony, Mr. Hanno.

13           So for the reasons I've just stated,

14   the debtor's motion to vacate the order of dismissal

15   is denied.

16           Could you give me an order, please?

17           MR. WYSOCKI:  Yes, Judge.

18           THE COURT:  Prepare a minute order.  Take

19   these papers back, please.

20           MR. ADAMS:  Thank you, Judge.

21                   (Which were all the proceedings
                     had in the above-entitled cause,
22                   December 28, 1999.)

23   I, GARY SCHNEIDER, C.S.R., DO HEREBY
     CERTIFY THE FOREGOING IS A TRUE AND
24   ACCURATE TRANSCRIPT OF PROCEEDINGS
     HAD IN THE ABOVE-ENTITLED CAUSE.

25

# ORDER

CCG-N002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

TCF NATIONAL BANK ILLINOIS

v.

JOHN HANNO and CHRISTINA
                    REITZ

NO.    OO M5 462

### ORDER

This cause coming on Defendant John Hanno's Emergency
Motion to Extend Stay of Enforcement of Order for
Possession Pending Ruling by the Illinois Appellate Court
Regarding a Permanent Stay Pending Appeal. The parties
being present by counsel and the court having
hear oral argument on the motion and considering
the pleadings and otherwise being fully advised
in the premises IT IS HEREBY ORDERED THAT
Defendant Hanno's Emergency Motion is denied.

Atty No. 29049
Name Foran Nasharr + Doble
Attorney for Plaintiff
Address 55 W Wacker Dr #925.
City / Zip Chicago IL 60601
Telephone (312) 704. 4444

ENTER:

JUDGE JOHN M. EGAN
JUN 02 2000
Circuit Court 1683
Judge      Judge's No.

**AURELIA PUCINSKI, CLERK OF THE** [ EXHIBIT **F** ] **OF COOK COUNTY, ILLINOIS**

CCG-NOO2-150M-12/29/99(03420164)

## IN THE APPELLATE COURT OF ILLINOIS,
### FIRST JUDICIAL DISTRICT, THIRD DIVISION
### APPEAL NO. 1-00-0156

STANDARD FEDERAL BANK FOR
SAVINGS,
       Plaintiff/Appellee,

    v.

JOHN HANNO, J & J EMPLOYEES
CREDIT UNION and Unknown Owners
and Non-Record Claimants,

       Defendant/Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)

No. 1-00-0156

Appeal from the Circuit Court
of Cook County, Illinois,
Chancery Division,
Case No. 94 CH 00239
Judge below: Robert V. Boharic

### ORDER

This cause coming to be heard on Appellant's motion for stay of possession order pending appeal,

IT IS HEREBY ORDERED:

Appellant's motion is ~~granted~~/denied.

ORDER ENTERED

MAY 31 2000

APPELLATE COURT, FIRST DISTRICT



Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 882 | **DATE** | 6/9/2000 |
| **CASE TITLE** | In Re: In Re: John A. Hanno | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   John A. Hanno's emergency motion for temporary restraining order and permanent injunction is denied for the reasons set forth on the reverse side of this minute order. The present appeal is stayed pending the bankruptcy judge's consideration of the Rule 9024 motion. If the bankruptcy judge concludes that he would be likely to grant relief that would impact the appeal, he can so state and I will formally remand the case for entry of such an order.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | date docketed | | |
| ✓ | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| | | | date mailed notice | | |
| MPJ | courtroom deputy's initials | | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

EXHIBIT

H

*In re: John A. Hanno*, No. 00 C 882

Debtor John Hanno's emergency motion for injunctive relief is
denied. Mr. Hanno seeks an injunction staying all actions to evict
debtor from his home and enjoining TCF from transferring or
otherwise disposing of his property. Before such an injunction may
issue, Mr. Hanno must show, at the very least, some likelihood that
he will prevail on the merits. He has failed to make this showing.
First, this court cannot enjoin the eviction proceeding under the
Rooker Feldman doctrine since the eviction was ordered by a state
court. Mr. Hanno argues that TCF breached a stipulated settlement
in the bankruptcy court by refusing to tender a payoff letter that
would enable Mr. Hanno to sell his property. But the support for
that contention consists of a belated affidavit from a lending
officer that he was told that TCF would not issue a payoff letter
if the buyer was Mr. Hanno. The lender's affidavit also states
that it might have made the loan if not for this statement. But
that is different from a statement that a loan was approved and was
prevented from going through by action by TCF (which was obligated
by the settlement agreement to issue a payoff letter on demand,
although Mr. Hanno was also obligated to provide TCF with any
proposed contract of sale before entering into such a sale; Mr.
Hanno does not represent that he complied with this requirement).
Furthermore, neither the lending officer's affidavit nor any other
affidavit states why Mr. Hanno could not have obtained this
information prior to the dismissal of the bankruptcy.

Mr. Hanno has also brought a motion pursuant to Bankruptcy
Rule 9024 before the bankruptcy judge who dismissed his bankruptcy.
I agree that whether there was a violation of the stipulated
settlement and if so what relief should be granted, is most
appropriately considered by the bankruptcy court in the first
instance. Accordingly, I will stay the present appeal (on which I
note, however, that Mr. Hanno has obtained three extensions of time
within which to file his brief in support) pending the bankruptcy
judge's consideration of the Rule 9024 motion. If the bankruptcy
judge concludes that he would be likely to grant relief that would
impact the appeal, he can so state and I will formally remand the
case for entry of such an order. Since on this record, however,
Mr. Hanno has not demonstrated a likelihood of success on that
motion, his motion for emergency relief is denied.

ENTER ORDER:

Elaine E. Bucklo

---

Elaine E. Bucklo
United States District Judge

**Dated:** June 9, 2000

EASTERN DIVISION

|  |  |  |
|---|---|---|
| In Re: John Hanno, | ) | 98 B 36360 |
|  | ) | Judge Schmetterer |
| Debtor | ) |  |

## A statement of the Issues to be presented on Appeal

1. Regarding Debtor(s)' motion to vacate order pursuant to Federal Rule 59(e) and Bankruptcy Rule 9023. Judge Schmetterer stated during a hearing on December 28, 1999 that he would not consider this motion because he believed that the refinancing documents submitted did not adequately cover the payoff of the first mortgage with T.C.F. Bank. However, we believe he misinterpreted the documents and that this financing would pay off in total the first and second mortgages.

2. All issues contained in Debtor(s)' motion to vacate order pursuant to Federal Rule 59(e) and Bankruptcy Rule 9023.

3. All issues contained in Debtor, John A. Hanno's Affidavit of December 27, 1999.

The names of all parties to the judgment, order or decree appealed from, and the names, addresses and telephone numbers of their respective attorneys are as follows:

Standard Federal/T.C.F. Bank
c/o Kenneth R. Wysocki, Esq.
303 West Madison Street
Suite 1900

John Hanno, Debtor, Pro Se
6 North Trail
Lemont, IL 60439

Date: January 14, 1999

Signed: _John A. Hanno_

John A. Hanno, Pro Se
6 North Trail
Lemont, IL 60434
(630) 257-8376

EXHIBIT
I

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

IN RE:                                ) IN A CHAPTER 13 PROCEEDING

JOHN A HANNO                          )

                                      ) No. 98B36360

                                      )

      Debtor(s)                      ) Judge JACK B. SCHMETTERER

                                      )

## DEBTOR(S)' MOTION TO VACATE ORDER PURSUANT FEDERAL RULE 59(e) AND BANKRUPTCY RULE 9023

NOW COMES John A Hanno who resides at 6 North Trail Court, Lemont, Illinois 60439, by and through the law offices of ROBERT J. ADAMS & ASSOCIATES, and states as follows:

1.  That on November 12, 1998, John A Hanno filed a voluntary petition for relief under Title 11 U.S.C.

2.  This Honorable Court has jurisdiction over this action under the provisions of Title 11 U.S.C. § 105 and Title 28 U.S.C. § 157.

3.  On December 2, 1999, this Honorable Court entered an Order which was docketed on December 7, 1999, to wit: *Debtor, and his officers, agents, servants, employees, and attorneys, are barred from filing another bankruptcy petition on his behalf for 180 days from the date of this order.*

4.  That pursuant to Rule 59(e) of the Federal Rules of Civil Procedure made applicable to the Bankruptcy Court through Rule 9023 of the Bankruptcy Rules a party has ten(10) days for the entry of a judgment to make this motion to alter or amend the judgment.

**EXHIBIT**

**J**

Robert J. Adams & Associates, 105 W. Madison, Suite 1100, Chicago, Illinois 60602 (312) 346-0100

5. The Order of Confirmation incorporated a <u>STIPULATED ORDER</u>, which in part provided under Paragraph Seven: *TCF shall provide a payoff letter without charge at debtor's request.*

6. That the Debtor has resources to pay the balance of the mortgage either through the sale of the property to a friend or an investor or to refinance the property. In each incident a lender requires a pay off letter and then a certain amount of time to underwrite a loan.

7. That Christopher V. Langone requested a pay off letter in the latter part of October 1999. See Exhibit #1 attached herto. An affadavit will be provided when this motion is presented in Court.

8. That the undersigned requested a pay off letter on Tuesday, November 30, 1999. Such was hand delivered to the undersigned on December 2, 1999 when the motion to dismiss was presented. See Exhibit #2 attached hereto.

9. That the attorney for the mortgagee represented that he had never received a request for a pay off letter other than the request of the undersigned. See lines 8 through 14 on Page 2 of the transcipt of the hearing on December 2, 1999 In re: JOHN HANNO, 98B36360. Exhibit #3 attached hereto.

10. That the Debtor believes that the pay off letter is inadequate and request an accounting of charges and interest with credits for payments made by the Debtor directly and from the Chapter 13 trustee from the date of the judgment in the foreclosure case to the present date.

   WHEREFORE John A Hanno, the debtor herein moves that this Honorable Court enter an order vacating the order entered on December 9, 1999 and docketed on  be vacated and that TCF provide the Debtor with a full accounting and pay off balance.

Respectfully submitted,

ONE OF THE ATTORNEYS FOR
John A Hanno

Robert J. Adams & Associates, 105 W. Madison, Suite 1100, Chicago, Illinois 60602 (312) 346-0100

*Exhibit "I"*

# THE LANGONE LAW FIRM

### 25 EAST WASHINGTON STREET - SUITE 1805
### CHICAGO, ILLINOIS 60602

CHRISTOPHER V. LANGONE
JOEL D. DABISCH

TELEPHONE (312) 782-2000
FACSIMILE (312) 782-2022

December 8, 1999

*Via Facsimile*
*346-6228*

Robert Adams
Robert J. Adams & Associate
105 West Madison Street, Suite 1100
Chicago, Illinois 60602

> Re:   In re: Hanno

Dear Mr. Adams:

I requested a payoff letter from Bruce Menkes and am now hearing that Standard Federal claims I did not make this request. I specifically recall leaving Bruce Menkes a voice mail requesting a pay-off letter so we could formulate a settlement demand in the state court litigation I am handling. Mr. Menkes never got back to me, nor provided a pay-off letter. I understand Standard Federal has consistently refused to provide such a letter.

I would be more than willing to send you an Affidavit stating that a request for pay-off letter was made to Bruce Menkes without any response.

Very truly yours,

THE LANGONE LAW FIRM

Christopher V. Langone

CVL/jc

# PAY-OFF STATEMENT

| MAKE CHECK PAYABLE TO | ESCROW NUMBER | ORDER NUMBER | AMENDED STATEMENT | STATEMENT DATE |
|---|---|---|---|---|
| TCF MORTGAGE CORPORATION<br>801 MARQUETTE AVE<br>MINNEAPOLIS, MN  55402 | | | N | 11/30/99 |

| INTEREST RATE | FIXED RATE LOAN | ARM/VRM | TELLER NUMBER |
|---|---|---|---|
| 9.000% | N | Y | 0000 |

THIS LOAN IS IN FORECLOSURE

| | YES | NO | THIS STATEMENT EXPIRES 3:30 P.M. | 12/16/99 |
|---|---|---|---|---|
| | | X | | |

PROPERTY ADDRESS

| LOAN NUMBER | INVESTOR CODE | |
|---|---|---|
| 710001556 | 581 | |

6 North Trail Court

Lemont, IL  60439-9757

| LOAN TYPE | LOAN SUB-TYPE |
|---|---|
| | |

| STATEMENT SENT TO | MORTGAGOR'S NAME AND ADDRESS |
|---|---|
| STANDARD FINANCIAL | JOHN A. HANNO<br>6 NORTH TRAIL COURT<br>LEMONT, IL  60439-9759 |

| INTEREST PAID YEAR-TO-DATE | INTEREST PAID YEAR-TO-DATE | HUD MORTGAGE INSURANCE PAID YEAR-TO-DATE | MORTGAGE INSURANCE YEAR-TO-DATE | ESCROW/IMPOUND BALANCE | INTEREST BUYDOWN BALANCE | |
|---|---|---|---|---|---|---|
| 0.00 | | | | 0.00 | 0.00 | |

| ESTIMATED DISBURSEMENTS | | | INTEREST CALCULATION FOR THIS STATEMENT | | | |
|---|---|---|---|---|---|---|
| DISBURSEMENT TYPE | NEXT DUE | AMOUNT | INTEREST RATE | CALCULATED FROM DATE | CALCULATED TO | INTEREST TO BE CHARGED |
| | | | 9.000% | 7/23/98 | 12/2/99 | 46,846.82 |

IF ANY DUE DATES ARE PRIOR TO EXPIRATION DATE OF THIS STATEMENT, THE AMOUNTS MAY HAVE BEEN INCLUDED IN REUIRED FUNDS ON ASSUMPTION THESE FUNDS WILL BE EXPENDED PRIOR TO PAYOFF.

TOTAL INTEREST TO BE CHARGED          46,846.82

## PAY-OFF AMOUNT CALCULATIONS

| | | |
|---|---|---|
| NET OUTSTANDING BALANCE | | 382,273.40 |
| INTEREST CALCULATED TO | 12/2/99 | 46,846.82 |
| ESCROW/IMPOUND ADVANCE BALANCE | | 13,792.69 |
| PREPAYMENT FEE | | 0.00 |
| STATEMENT FEE | | 0.00 |
| FAX STATEMENT FEE | | 0.00 |
| TOTAL OTHER FEES | | 0.00 |
| TOTAL REQUIRED TO PAY-OFF | | 442,912.91 |

| PER DIEM RATE | FUNDS RECEIVED ON OR AFTER | MUST INCLUDE LATE CHARGE | FUNDS RECEIVED ON OR AFTER | MUST INCLUDE LATE CHARGE |
|---|---|---|---|---|
| N/A | N/A | N/A | N/A | N/A |

## IMPORTANT INFORMATION

FUNDS MUST BE IN FORM OF CASHIERS OR CERTIFIED CHECK AND PAYABLE AS NOTED ABOVE

Exhibit 3

1

1
2      IN THE UNITED STATES BANKRUPTCY COURT
       NORTHERN DISTRICT OF ILLINOIS
            EASTERN DIVISION

3

4   In re:                    )
                              )   No. 98 B 36360
5   JOHN HANNO,               )   Chicago, Illinois
                              )   December 2, 1999
6              Debtor.        )   9:30 a.m.

7

8          TRANSCRIPT OF PROCEEDINGS
    BEFORE THE HONORABLE ERWIN I. KATZ

9

10

    APPEARANCES:
11

    MR. ROBERT ADAMS
12  on behalf of John Hanno;

13  MR. BRUCE MENKES
    MR. DENNIS VENA
14  on behalf of TCF National Bank Illinois.

15

16

17

18

19

20

21

22

23

24

25

2

1         THE CLERK:  John Hanno, 98 B 36360.

2         MR. ADAMS:  Good afternoon, your Honor.

3    Robert Adams on behalf of Mr. Hanno.

4         MR. MENKES:  Good morning, your Honor.  Bruce

5    Menkes and Dennis Vena on behalf of TCF National

6    Bank Illinois.

7              Your Honor, this is our motion to

8    dismiss the case.  A stipulated order was entered on

9    April 1st which stated that if the residence in

10   question was not sold by yesterday's date, the plan

11   would terminate and the case would be dismissed

12   today.

13        MR. ADAMS:  Your Honor, if I may?  In the

14   stipulated order, paragraph 7, which counsel has

15   attached to his motion, "TCF shall provide payoff

16   letter without charge at the debtor's request."

17             The debtor has twice requested this

18   information and it has not been forthcoming, and

19   he's not able to consummate repayment to the

20   creditor until he gets this.  I don't know why they

21   do not wish to give him this information.  It was

22   first requested by Mr. Hanno's attorney who

23   represented him in another matter in state court

24   against the bank, and I also requested it.

25             Accordingly, we're not in a position to

3

1   pay the debt.  He has several resources to refinance

2   and one to sell to a party who is somewhat related

3   to him.  Actually, his significant other.  This is

4   very much part of the stipulated order that they

5   shall provide the payoff letter, and they have not

6   done so, making it impossible for him to consummate

7   a sale or refinance.

8        MR. MENKES:  Your Honor, that's plain

9   untrue.  The first request we ever received for a

10  payoff letter was two days ago.  We sent a copy to

11  counsel yesterday.  I have another copy for him

12  now.  It's just not true.  There is nothing we would

13  rather do than get a payoff letter and get the loan

14  paid.

15       MR. ADAMS:  I only requested it two days

16  ago.  The attorney who represented him in another

17  matter requested it and did not get it.  Obviously

18  we need the payoff.  Now that we have --

19            Do you have a letter you're going to

20  tender to me?  You're going to tender something to

21  me?

22       MR. MENKES:  I'm tendering counsel another

23  copy of the payoff which we sent him.

24            Your Honor, we did not receive any

25  request for a payoff from counsel in any other

4

1    case. If there was such a request, it should have

2    been brought to the court's attention weeks or

3    months ago. Judge Schmetterer was quite clear, and

4    the parties were quite clear in their stipulated

5    order, that today was the final day.

6         MR. ADAMS: Well, you know --

7         THE COURT: What's the status of the

8    foreclosure?

9         MR. ADAMS: The sale has been -- they had a

10   sheriff sale. They haven't gotten an order

11   confirming the sale. So it's critical that we have

12   some time to refinance or to sell the property. He

13   has four companies working --

14        THE COURT: The stipulated order was entered

15   when?

16        MR. MENKES: April 1st.

17        MR. ADAMS: April 1st. "They shall provide a

18   payoff letter." Just getting it now --

19        THE COURT: Did you ask for one in May, June,

20   July, August?

21        MR. ADAMS: No. We asked for one about a

22   month ago.

23        MR. MENKES: No, your Honor.

24        THE COURT: The motion to dismiss is granted.

25        MR. MENKES: Thank you, your Honor.

5

1          .    MR. VENA:   Thank you, Judge.

2

3                    (Which were all the proceedings
                     had in the above-entitled cause,
4                    December 2, 1999.)

5    I, GARY SCHNEIDER, C.S.R., DO HEREBY
     CERTIFY THE FOREGOING IS A TRUE AND
6    ACCURATE TRANSCRIPT OF PROCEEDINGS
     HAD IN THE ABOVE-ENTITLED CAUSE.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

05/22/2000  13:24   6302578376                  JOHNA                    PAGE  01
05/22/00  MON 18:23 FAX 630 789 0528    FIELDSTONE MORTGAGE CO.               002

Dear John and Christine,

We have had no success in obtaining a pay off from T.C.F
Bank. I spoke with Brian Jensen there and he said they would not
be issuing a pay off until you dropped your law suit with them. He
also stated that you previously had attempted to refinance using
christines credit. He said that they considered her your common
law wife and would not allow a transaction involving her to take
place. If you have any questions please call me.

Sincerely,

Steve Greiff
Fieldstone Mortgage



EXHIBIT

K

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

IN RE:                 )

                    )

JOHN A. HANNO      )      98 B 36360

                    )

        Debtor.     )      The Hon. Jack B. Schmetterer

                    )      Presiding

### DECLARATION OF BRIAN JENSEN

Pursuant to 28 U.S.C. Section 1746, I, Brian Jensen, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

1.      I am above 21 years of age, have personal knowledge of the matters stated in this declaration, and could competently testify to the matters stated in this declaration if so required.

2.      I am currently the Vice-President of Lending for TCF Mortgage Corporation. I have personal knowledge of the file for the loan made to Mr. Hanno on May 22, 1992 for the house and property located at 6 No. Trail in Lemont ("Property").

3.      I have reviewed the affidavit of Steve Greiff ("Greiff Affidavit") that has been submitted by Mr. Hanno in connection with this case.

4.      I have never met with Mr. Greiff in person. Prior to December 2, 1999, I had never spoken with Mr. Greiff, in person or via the telephone. In fact, the first time I ever personally spoke with Mr. Greiff was during a telephone call at 8:30 a.m. on March 10, 2000, more than three months after Mr. Hanno's Sixth Bankruptcy was dismissed. I am absolutely certain of the time and date of that call because I keep a record of calls I make to, or receive from, loan officers or mortgage companies. I keep these records in my day planner. I specifically recall the date and substance of this conversation with Mr. Greiff because it involved this case. Any suggestion that I spoke with Mr. Greiff -- or anyone else at Fieldstone Mortgage Company -- regarding the Property prior to December 1, 1999 is false.

5.      I never told Mr. Greiff that TCF Bank would not permit a transaction involving Christina Reitz to take place. I did tell Mr. Greiff, as a courtesy, that Mr. Hanno no longer owned the Property, and that TCF was the legal owner of the Property. I told Mr. Greiff this so that he would not waste his time arranging financing for a sale of the Property by Mr. Hanno; since Mr. Hanno no longer owned the Property, I wanted Mr. Greiff to understand that any sale would have to involve TCF. I wanted to make sure that Mr. Greiff had not been mislead by Mr. Hanno or Ms. Reitz, and that he knew the facts of the situation.

6.      I never told Mr. Greiff that TCF would not issue a pay-off letter.

7.      Mr. Greiff never told me that he had seen a sales contract for the Property.



8.    I am the only person at TCF who is authorized to speak with other lenders about the Property.  I never did anything to prevent Ms. Reitz from purchasing the Property from Mr. Hanno prior to December 2, 1999, and any suggestion otherwise is false.

9.    I never told any lender, or any person, that TCF would not allow Ms. Reitz to be involved in a sale of the Property.  If any person or attorney has made a representation to this Court that I said TCF would never allow Ms. Reitz to be involved in a sale of the Property, such representation is false.  In fact, if Ms. Reitz would have been able to purchase the Property, prior to December 2, 1999, in compliance with the terms of the Stipulated Order between Mr. Hanno and TCF, I would have welcomed such a sale, and would have been powerless to stop it.

Executed on: June 16, 2000

BRIAN D. JENSEN

## CERTIFICATE OF SERVICE

I, Kenneth R. Wysocki, an attorney, certify that a copy of the foregoing *Response to Debtor's Purported Rule 60(b) Motion* was served on:

> Mr. Tom Vaughn
> U.S. Bankruptcy Court Trustee
> 11 East Adams Street
> Suite 1500
> Chicago, IL 60603

by placing a copy into a postage-paid envelope, addressed to the attorney listed above, and placing said envelope into the U.S. Mail chute located at 303 West Madison Street, Chicago, Illinois, 60606, before the hour of 5:00 p.m. on this 19th day of June, 2000; and

> Julie A. Boynton
> Law Offices of Forrest L. Ingram, P.C.
> 79 W. Monroe Street
> Suite 1210
> Chicago, IL  60603

by personal delivery on this 19th day of June, 2000.

Kenneth R. Wysocki