# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

E O D   JUN 21 2000

**FILED**
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS

JUN 2 1 2000

WAYNE E. NELSON, CLERK
PS REP. - FR

In re:                              )
                                    )   98 B 36360
    JOHN A. HANNO            )
                                    )   The Honorable
    Debtor.                 )   Jack Schmetterer

## DEBTOR'S REPLY IN SUPPORT OF MOTION FOR 60(b) RELIEF

Debtor John A. Hanno, by and through his attorneys, Forrest L. Ingram and Julie A. Boynton for his reply in support of his motion for Rule 60(b) relief states as follows:

### Introduction

With no stay, TCF has now succeeded in evicting Debtor from his home. Without waiting for ruling from this Court, TCF had the sheriff remove Debtor and Ms. Reitz from their home and place all their belongings on the lawn. As a result of the trauma caused by TCF's actions, Ms. Reitz collapsed, was taken by ambulance to the hospital where it was discovered she was bleeding into her chest. As of the filing of this reply, Debtor has been disposed of his home and place of business.

## I. DEBTOR COULD NOT SEEK RELIEF PRIOR TO DISMISSAL OR WITHIN 10 DAYS AFTER BECAUSE HE HAD NO PROOF THAT TCF WAS IMPEDING HIS ABILITY TO SELL HIS HOME UNTIL A LENDER CAME FORWARD AFTER DISMISSAL AND REVEALED TCF'S WRONGFUL CONDUCT.

Debtor should not be barred from relief and TCF should not escape accountability for its wrongful conduct because proof of its interference with prospective lenders was not discovered until after Debtor's bankruptcy case was dismissed. Debtor could not have raised the issue of TCF's wrongful conduct during the bankruptcy proceedings or within 10 days thereafter because he did not have proof prior to his case being dismissed that TCF was attempting to negatively influence potential lenders. Debtor could not ask

for relief in this Court with only suspicion, but no proof. Debtor was fortunate enough to learn about TCF's wrongful conduct when a sympathetic potential lender advised Debtor that TCF's was engaged in conduct intended to interfere with Debtor's ability to obtain financing to pay the TCF mortgage off. Debtor could not have discovered this evidence sooner, because he had no actual knowledge of what TCF was telling lenders and only discovered the information when one potential lender subsequently came forward with proof.

Had this Court been aware on December 2, 1999 that TCF had actively engaged in conduct intended to thwart Debtor's ability to comply with the agreed stipulation during the term of the agreed stipulation, there is no doubt that relief would have been offered by this Court at that time. The result should be no different now. Debtor should not be denied relief because TCF was able to successfully conceal its wrongful conduct until after Debtor's bankruptcy was dismissed. That result would be contrary to justice and equity.

Further, in its response TCF misrepresents that Mr. Grieff's affidavit does not state when the alleged conversation between Mr. Grieff and Mr. Jensen took place. In fact it does, it expressly states it took place between April 1, 1999 and December 1, 1999, the term of the stipulated agreement.

## II.    THE FAILURE OF DEBTOR TO COMPEL TCF TO PRODUCE THE PAYOFF LETTER SHOULD BE EXCUSED.

TCF asserts Debtor should be barred from relief because he failed to seek court assistance to compel TCF to produce a payoff letter prior to dismissal. First, TCF is raising a red herring and attempting to divert the Court's attention away from the tactics it employed to undermine and frustrate Debtor's ability to comply with the agreed

2

stipulation.  It is Debtor's assertion that the production of a pay off letter is not critical to

his cause of action because TCF was apparently attempting to persuade potential lender's

not even to engage in discussion of financing with Debtor.  Debtor contends TCF was

engaged in conduct designed to prevent potential lenders from even reaching the point

where they would request a payoff letter.  In addition, when TCF failed in its efforts to

discourage potential lenders, it would then further interfere by failing to provide the

payoff letter.

Further, TCF's argument should be rejected for at least these reasons:  (1)  TCF

had an absolute obligation under the agreed order to produce a letter, its failure to do so is

itself misconduct justifying reopening the matter (misconduct of a party is a reason for

60(b) relief);  (2)  By the time Debtor understood that part of the financing problem with

Fieldstone was TCF's failure to provide a payoff letter, the loan program had changed

and required reapplication which would have made a December 1, 1999 closing

impossible, making a motion to compel futile; (3) Debtor did attempt to advise the court

that TCF was not providing the required letter even though Debtor requested it, but this

court declined to allow a hearing or testimony.

## III.    CONTRARY TO TCF'S ASSERTIONS, THE RELIEF DEBTOR SEEKS IS AVAILABLE ONLY BECAUSE TCF IS THE CURRENT OWNER OF DEBTOR'S FORMER RESIDENCE.

TCF totally misses the mark by claiming the relief Debtor seeks is not available

because TCF is now the undisputed owner of the property.  It is only because TCF is the

undisputed owner of the property that the relief Debtor requests is available. Had the

property been purchased by a third party at the foreclosure sale, Debtor would have no

possibility of obtaining the relief he now requests—that is, that he be allowed to pay TCF

the amount it purchased the home for at foreclosure. Debtor is asking this Court to
fashion an equitable remedy that will place each party in the position it would have been
but for TCF's wrongful conduct. That is, the mortgage to TCF would have been satisfied
and Debtor would be in possession and ownership of his home.

In the alternative, Debtor has prayed not only that TCF be required to tender his
former residence to him in exchange for the amount TCF paid at foreclosure, but Debtor
also included a general prayer for relief allowing this Court to fashion a different, but
appropriate remedy, including a substantial judgment, if the remedy Debtor specifically
requested is not available.

## IV.   THE SELF-SERVING AFFIDAVIT OF TCF'S EMPLOYEE IS INSUFFICIENT TO DENY DEBTOR RELIEF WHERE THE DEBTOR HAS PRODUCED THE AFFIDAVIT OF A UNRELATED THIRD PARTY TO SUPPORT HIS REQUEST FOR RELIEF.

TCF attaches to its response the affidavit Mr. Jensen, one of its employees, which
TCF contends undermines Debtor's position and supposedly shows that TCF did not act
wrongfully. First, the affidavit TCF presents is from one of its employees. The affidavit
which Debtor presents is from Mr. Grieff, an unrelated third party with no vested interest
in the results of this case. TCF contends Mr. Grieff's affidavit is not specific with respect
to when Mr. Grieff spoke with Mr. Jensen. However, the affidavit clearly delineates that
it was during the time the stipulated order was executory. Mr. Jensen claims otherwise,
but that does not mean that Mr. Jensen is telling the truth and Mr. Grieff is lying. In fact,
even after the dismissal, Debtor was attempting to obtain financing and it is not
impossible that the conversation Mr. Jensen is speaking of took place in addition to the
conversation detailed in Mr. Grieff's affidavit.

TCF claims that Debtor has no support for his allegation that other lenders

4

received similar communications from TCF.  Debtor agrees that no other lender has come forward.  Debtor is most appreciative that Fieldstone did.  This is not the kind of information which is easy to obtain.  Debtor does have other evidence which supports his claim that he believes TCF was also communicating in an unfavorable manner with other lenders.  That is, the change of attitude he experienced after the lender called TCF.  This is further evidence supporting Debtor's claim.

## V.   DEBTOR IS NOT ATTACKING ANY STATE COURT ORDER AND THEREFORE, ROOKER-FELDMAN IS NOT A BAR.

Debtor's motion for 60(b) relief is not an attack any of the proceedings or orders entered in state court.  The purpose of Debtor's 60(b) motion is to bring to this court's attention the fact that TCF engaged in misconduct to prevent or interfere with Debtor's ability to comply with the terms of the stipulated agreement and to ask the Court to place Debtor in the position he would have been without TCF's misconduct.  Debtor also seeks to maintain the status quo during the pendency of these proceedings.

TCF continues to wrongfully attempt to convert Debtor's request for equitable relief into an attack on the state court judgment of foreclosure and the order of possession.  This Court should not be fooled.  Contrary to TCF's assertions, Debtor is not attacking the judgment of foreclosure.  He is seeking proper review of the judgment of foreclosure in the state court.

The crux of Debtor's argument before this Court does not relate to the state court actions at all.  What Debtor contends in this Court is that TCF's wrongful conduct induced this Court to enter the judgment of dismissal.  It is this Court's order which Debtor seeks to attack. Debtor seeks to reinstate his case which was dismissed  solely because of his purported inability to comply with the stipulated agreement.   All other and

subsequent injury to Debtor flows from the order of this Court dismissing this case. In

other words, had TCF not successfully interfered with Debtor's ability to finance the

property during the term of the stipulated agreement, Debtor would have been able to

refinance the property and he would be the current owner.  TCF owns the property only

because it inferred with Debtor's financing of the property.  All relief which Debtor seeks

is to rectify the damage cause by TCF from its wrongful interference in actions in this

Court.

Money damages alone would not place Debtor in the position he would have been

without TCF's wrongful conduct.  Homes and properties are unique items and cannot be

replaced with pure monetary relief.  Further, Debtor had made significant improvements

in the property which allowed him to operate his business on those premises.  Thus,

Debtor lost not only his home, but his place of business.

TCF claims that this Court should deny Debtor relief because his claim before

this court is inextricably intertwined with the state court judgment.  That is not true.

A federal claim is deemed 'inextricably intertwined' with the state-court judgment

if the federal claim succeeds only to the extent that the state court wrongly decided the

issues before it."  In re Glass, 240 B.R. 782,  786, 13 Fla. L. Weekly Fed. B 13,

(Bkrtcy.M.D.Fla. 1999).  In this case, Debtor's claim that TCF engaged in wrongful

conduct and interfered with Debtor's ability to comply with the agreed stipulation is not

intertwined with the state court judgment of foreclosure or possession, except to the

extent that the order of confirmation and possession arose after the bankruptcy dismissal.

Whether the state court confirmed the foreclosure sale or not has no direct or indirect

bearing on the claim Debtor makes in this Court that his bankruptcy case was wrongfully

dismissed for his failure to comply with the agreed stipulation because of TCF's misconduct.

### a. In the alternative, Debtor argues that Rooker-Feldman is not applicable.

There are several exceptions to the hard and fast Rooker-Feldman rule of federal-state comity. These exceptions generally come into play when the state proceedings are considered a legal nullity, and thus, are void ab initio. In re Glass, 240 B.R. 782, 786, 13 Fla. L. Weekly Fed. B 13, (Bkrtcy.M.D.Fla.1999) citing See Kalb v. Feuerstein, 308 U.S. 433, 438-40, 60 S.Ct. 343 (1940) (holding judgment in violation of automatic stay void); but see Sikes v. Global Marine, Inc., 881 F.2d 176, 178 (5th Cir.1989) (finding violation of automatic stay voidable rather than void ab initio). In this case, Debtor asserts the order confirming the Sheriff's sale is void as violative of the automatic stay. The dismissal of Debtor's bankruptcy was docketed on December 7, 1999. Accordingly, the automatic stay was in effect until December 7, 1999. On December 6, 1999, TCF filed a motion in state court to confirm the Sheriff's sale. That filing was in violation of the automatic stay. Courts will not tolerate unauthorized acts by creditors by allowing possession of, or facilitating the exercise of control over, or permitting the dismemberment of property of the estate outside the provisions of the Code. Matter of Garofalo's Finer Foods, Inc., 186 B.R. 414, 436, (N.D.Ill. 1995). To do so would make a nullity of section 362....); In re Shuman, 122 B.R. 317, 318 (Bankr.S.D.Ohio 1990). Violations of the automatic stay are void and without effect. Id. citing See In re Germansen Decorating, Inc., 149 B.R. at 522; In re BNT Terminals, Inc., 125 B.R. at 971 ("the majority of Circuit Court cases hold that acts in violation of the automatic stay are void"). Accordingly, the confirmation of the foreclosure sale is void, a legal nullity.

Acts in violation of the automatic stay imposed by § 362(a) are void ab initio. In re Garcia, 109 B.R. 335, 340 (N.D.Ill. 1989)  Thus, jurisdiction is vested in this court and Rooker-Feldman is not a bar.

Other circuits have found an exception to Rooker- Feldman where the state court judgment was "procured through fraud, deception, accident, or mistake...." In re Glass, 240 B.R. 782, 786, 13 Fla. L. Weekly Fed. B 13, (Bkrtcy.M.D.Fla.1999) citing Sun Valley Foods Co. v. Detroit Marine Terminals, Inc. (In re Sun Valley Foods Co.), 801 F.2d 186, 189 (6th Cir.1986). Here, TCF engaged in a secretive scheme to prevent Debtor from complying with the agreed stipulation. That scheme eventually culminated in Debtor's bankruptcy case being dismissed. As a result of the dismissal, TCF was able to wrongfully obtain ownership of Debtor's property. Since the state court judgment obtained only because TCF duped Debtor and this Court, Rooker-Feldman will not apply.

## VI.   DEBTOR IS ENTITLED TO AN EVIDENTIARY HEARING.

Debtor has placed before this Court sufficient newly discovered evidence and evidence of the misconduct of TCF to justify a hearing to determine if TCF did in fact compromise Debtor's ability to comply with the agreed stipulation.

WHEREFORE Debtor respectfully requests that this Honorable Court set this matter for hearing and grant Debtor such other and further relief as may be just and equitable.

Respectfully submitted,

JOHN A. HANNO

By: One of his attorneys

8

Forrest L. Ingram
Julie A. Boynton
Forrest L. Ingram, P.C.
79 W. Monroe, Suite 1210
Chicago, IL 60603
312/759-2838